## CHAPMAN V. HUDSON.

1. STATUTE OF LIMITATIONS: *Trover. Conversion by bailee.*

An action in the nature of trover cannot be maintained against a bailee for hire or his assignee, until the term of hire expires, and the statute of limitations does not run against the owner of the property until then, unless the bailee or assignee does some act with the property inconsistent with his right as bailee, and amounting to an abandonment of it. This would be a conversion for which the action might be brought immediately, and from which time the running of the statute will date.

[In this case the defendant purchased the property from the bailee, and used it as his own before the term expired; but the action was not brought for more than three years after the purchase, but less than three after the term. *Held:* Barred.—REP.]

2. SAME: *Same. Removal of property.*

The removal or concealment of property to avoid its recovery by an action of replevin, will not postpone the commencement of the statute of limitations against an action of *trover* for conversion of the property.

APPEAL from *Little River* Circuit Court.

Hon. J. E. BORDEN, Special Judge.

*W. P. Feazel,* for appellant.

Bales was a bailee for hire, and his bailor could bring no action against him, either of trover or replevin, nor against his vendee, until the expiration of his lease. The action was not barred. *Angell on Lim., p. 128, note 3 (6th*

ed.); *10 Ark., 228; 17 ib., 449; Bliss on Code Pl., sec. 23; Story on Bail, sec. 39; Cooley on Torts, p. 449; 50 Ala., 19; Wells on Replevin, secs. 31 to 53.*

If one by his unlawful act prevents another from bringing a suit, the statute will not run until the disability is removed. *Gantt's Dig., sec. 4143; 24 Ark., 559.*

*A. J. Hudson, pro se.*

When there is a tortious, or wrongful taking, the statute of limitations begins to run from the taking or conversion. *Angell on Limitations, 5th ed., sec. 304, and notes.*

If Bales sold the wagon and oxen, the sale was a conversion on his part, as well as on the part of defendant, Hudson, for which plaintiff might immediately have brought his action against Bales or Hudson, or both of them, and the statute of limitations would begin to run from date of sale. *2 Hilliard on Torts, 4th ed., sec. 4, pp. 32, 33.*

It is immaterial whether Bales sold the wagon and team, or that the defendant took them without Bales' consent. Either act would amount to a conversion on defendant Hudson's part, and the statute would begin to run from the conversion in his favor. *2 Hilliard on Torts, 4th ed., secs. 123 and 3 a, pages 26, 27, 28, 29, 30, and notes.*

The statute begins to run whenever the cause of action is complete. *10 Ark., 228; 32 ib., 122.*

1. STATUTE OF LIMITATIONS: When commences in trover.

COCKRILL, C. J. Chapman sued Hudson, in the Little River circuit court, to recover the value of a wagon and oxen which the complaint alleged belonged to the plaintiff and had been converted by Hudson to his own use. The conversion took place in the summer of 1879; the suit was brought in December, 1882, more than three years

ther'eafter. The defense was the statute of limitations. The appellant sought to avoid the operation of the statute by proving that he hired the oxen and wagon to one Bales for the residue of that year, and that Hudson obtained his possession from Bales. It is argued from this that the appellant could have maintained no action for the property until the beginning of the year 1880, that is, until the expiration of Bales' term of hiring. Now, as Bales was a bailee for hire and had the right of possession and an assignable interest in the property, this argument would be unanswerable if he or his vendee had done no act amounting to a conversion; for while the right of possession is in another, the owner cannot maintain an action in the nature of trover. But Bales, notwithstanding he had only the temporary use of the property, took it to the state of Texas, and, being followed there by the appellee and threatened by him with the levy of an attachment upon his effects, turned over the appellant's property to the appellee in payment of the debt for which the attachment issued; that is, he exercised the right of absolute ownership over it. This conduct was inconsistent with his right as bailee and was an abandonment of it. It was a conversion of the property, and is likened, by the authorities, to a destruction of it, and put an end to the contract of bailment, and the owner's right to take possession of the property or to recover damages for the tort accrued immediately upon the commission of the act. *Brown v. Wallace*, 17 Ark., 451–2; *Spencer v. McDonald*, 22 ib., 476; *Baily v. Colby*, 34 N. H., 29; *Sargeant v. Gill*, 8 ib., 325; *Sanborn v. Cohuren*, 6 ib., 14; *Farrant v. Thompson*, 5 B. & Ald., 826; *Galvin v. Bacon*, 8 Me., 28; *Bigelow Lead. Cas. Tort*, p. p. 429–30; Note to *De Voin v. Mich. Lumber Co.*, 25 Am. Law Reg., 240–1.

It is true Bales testified that he notified the appellee that he surrendered nothing more than his own interest in the property, but that tended to prove only that he committed no wrongful act in making the sale, and, if true, it would have been a defense to an action against him for conversion. But his testimony and all the proof in the case lead to but one conclusion as to the intention of his vendee, the appellee here. He avowed his design to hold the property absolutely at the time of the negotiation, and exercised absolute dominion over it when it came to his possession. His version of the matter was that he believed Bales had purchased the property from the appellant on a credit and had the right to sell it. The appellant was not ignorant of the adverse claim of title. A few weeks after the appellee's purchase, he employed an attorney to bring suit for the recovery of the specific articles,. and the attorney went to Texas, without delay, for that purpose, but the appellee prevented the suit, at that time, it is said, by an unexpected removal of the property. No further attempt appears to have been made by the appellant to assert his rights until the institution of this suit.

2. SAME: Removal of property to avoid action. The appellee testified on the trial that he had allowed the property to remain in Texas to prevent an action against him for its recovery, and it is argued that this should stop the operation of the statute of limitations in this suit. The position is untenable. There is absolutely nothing in the record to show that the remedy now adopted by the appellant could not have been pursued at any time after his cause of action accrued as readily as at the date of the institution of this suit.

It follows, then, the statute has run against the appellant's action from the date of the appellee's possession in 1879, or at least from the time the appellant was apprised of the hostile attitude of the possession (*Pickens v. Sparks,*

*44 Ark., 291; Lawson v. Cunningham, 21 Ga., 454; Wood on Lien, sec. 183*), and as suit was not commenced within three years thereafter, the action was barred, and the judgment must be affirmed.