SCROGGIN FARMS CORPORATION *v.* HOWELL.

4-9080                                    226 S. W. 2d 562

Opinion delivered February 6, 1950.

*Martin K. Fulk, Leffel Gentry* and *U. A. Gentry,* for appellant.

*Ralph Ray* and *Rose, Dobyns, Meek & House,* for appellee.

LEFLAR, J.   This is an action by Scroggin 'Farms Corporation (hereinafter called Scroggin) to recover the value, above loan and storage charges, of certain cotton stored in Commodity Credit Corporation (hereinafter called Commodity) warehouses in 1938 and 1939. Assignments of the right to the cotton had originally been executed by defendants Gash and Bryant, who grew the cotton, and had after various successive reassignments come into Scroggin's hands.   In the latter part of 1940 Gash and Bryant assigned the same cotton rights a second time to defendant Howell, who in 1941 received the cotton from Commodity.   The present action against Howell, Gash and Bryant was commenced Sept. 26, 1945.   In the Chancery Court it was held that plaintiff Scroggin's cause of action was barred by the three-year statute of limitations   (Ark.   Stats.,   1947,   § 37-206).    Plaintiff appeals.

Gash and Bryant, producers of the cotton, pledged it to Commodity as security for government (Commodity) loans. The arrangement called for the cotton to be stored in an approved warehouse, with warehouse receipts issued to Commodity. The producer had the right to redeem his pledge by repaying the loan plus storage and incidental charges. At the time cotton prices were low and no profit could be gained from redemption. Speculators in cotton futures, however, were willing to pay a small amount for assignments of these redemption rights, in the hope that prices would rise, and Scroggin secured such assignments of the redemptive rights of Gash and Bryant.

On April 3, 1940, while the price of cotton was still down, Commodity tried to eliminate the interests of such speculators as Scroggin by issuing an order that all prior assignments must be turned in to Commodity for redemption by July 31, 1940, and that Commodity would thereafter honor only such assignments as were executed on a new "Form R." Many holders of prior assignments then secured new "Form R" assignments from the original producer-assignors, but Scroggin chose not to do so, being advised by his attorney that Commodity's effort to "freeze out" the holders of old assignments was ineffectual. This advice proved to be sound, it being later held that the rights of assignees under the old assignments were still good. *John M. Parker Co.* v. *May,* (C. C. A., 5th) 128 Fed. 2d 1020; *Harris* v. *Commodity Credit Corporation,* (E. D., Ark.) 47 Fed. Supp. 681.

Subsequent to July 31, 1940, Commodity, assuming that its "Form R" order was valid, notified Gash and Bryant that they still had redemptive rights in their cotton. Gash and Bryant, acting under the same assumption, executed new assignments of their redemptive rights, on "Form R" blanks, to defendant Howell. Howell turned in his "Form R" assignments to Commodity and received the cotton some time before July 31, 1941, the expiration date for these redemptive rights.

On July 25, 1941, appellant Scroggin presented the old assignments to Commodity and asked to redeem the

cotton. Commodity turned them down. Scroggin knew that someone had redeemed the cotton covered by the assignments, at least by July 31, 1941, because the price had by then gone up so that redemption was profitable. Scroggin's principal witness, Oliver Scroggin, testified that he tried on July 25, 1941, and later also, to find out who had the new assignments and had exercised the right of redemption, but that he did not find out who they were until May 24, 1943, when Commodity disclosed Howell's name in its answer to a suit filed by Scroggin against Commodity on a related matter.

Scroggin contends that the three-year statute of limitations (§ 37-206) could run against it only from that date, and that its right was therefore not barred when this suit was commenced on Sept. 26, 1945. This is on the theory that the assignment to Howell by Gash and Bryant was in the nature of a fraud upon Scroggin, concealed until May 24, 1943, and not the sort of open taking of goods or chattels to which § 37-206 immediately applies.

Alternatively, Scroggin contends that its cause of action is not controlled by § 37-206 at all, but rather by the five-year statute of limitations (§§ 37-209 and 37-213) applicable to actions on written contracts. This is on the theory that its rights are based on the original written assignments executed in 1938 or 1939 by Gash and Bryant and that the cause of action arose when in 1941 Commodity violated these rights by delivering the cotton to Howell and refusing to deliver it to plaintiff. If the cause of action arose in 1941 the five-year statute would not have barred it when action was begun in 1945.

(1) It is proper to consider first the question of which section of the statute of limitations applies here. We conclude that § 37-206 is applicable. The wrong complained of is the taking, or conversion, of plaintiff's cotton. The assignment to plaintiff by Gash and Bryant put the title in plaintiff (subject of course to Commodity's superior interest) and was a completely executed transaction. The right Scroggin now claims against Gash and Bryant is the same right it had against

all the world—the right not to have its cotton stolen or otherwise improperly taken. That is not a contract right; it is an ownership right, and violation of the right is a conversion to which under our law the three-year statute of limitations is applicable. *Thomas* v. *Westbrook,* 206 Ark. 841, 177 S. W. 2d 931.

Apart from that, appellant's argument points out no express clause or proviso in the writing which defendants' resale has violated. Appellant relies rather upon breach of an implied warranty of title which is deemed to be discoverable from defendants' assignment. We need not decide whether or not this implied warranty is to be read into the contract; it is enough that it is not written into the contract. The three-year statute (§ 37-206) applies to actions on all contracts, expressed or implied, which are not in writing, and has regularly been applied to incidental obligations implied from written contracts. *Dismukes* v. *Halpern,* 47 Ark. 317, 1 S. W. 554; *Hazel* v. *Sharum,* 182 Ark. 557, 32 S. W. 2d 315. Appellant's argument to the contrary is based upon *Sims* v. *Miller,* 151 Ark. 377, 236 S. W. 828, and *Louisville Silo & Tank Co.* v. *Thweatt,* 174 Ark. 437, 295 S. W. 710, both cases in which the five-year statute of limitations was deemed applicable to actions on warranties contained in written contracts of sale. It must be noted, however, that in neither of these cases is it shown that the suit was on an implied warranty, as distinguished from a warranty actually contained in the writing. Our conclusion is that the five-year statute does not control the type of warranty that might by implication be spelled out in the present case.

(2)   Nor can we accept the contention that the existence of Scroggin's cause of action was so concealed, either by defendant Howell or by defendants Gash and Bryant, as to toll the running of the statute of limitations in the manner prescribed by Ark. Stats., § 37-229, or otherwise.

The classic language on this point in Arkansas is that of Wood, J., in *McKneely* v. *Terry,* 61 Ark. 527, 545, 33 S. W. 953: "No mere ignorance on the part of the plaintiff of his rights, nor the mere silence of one who is

under no obligation to speak, will prevent the statute bar. There must be some positive act of fraud, something so furtively planned and secretly executed as to keep the plaintiff's cause of action concealed, or perpetrated in a way that it conceals itself. And if the plaintiff, by reasonable diligence, might have detected the fraud, he is presumed to have had reasonable knowledge of it.'' See *Meacham* v. *Mid-South Cotton Growers Assn.*, 196 Ark. 78, 115 S. W. 2d 1078; *Kahn* v. *Hardy*, 201 Ark. 252, 144 S. W. 2d 725; *Manka* v. *Martin Metal Mfg. Co.*, 153 Kans. 811, 113 Pac. 2d 1041, 136 A. L. R. 653.

In the present case, Commodity knew that Howell had the reassignments from Gash and Bryant, and some of Commodity's employees testified that they would have given Scroggin Howell's name had Scroggin pressed a request for it. The testimony on behalf of Scroggin indicates that no great diligence was exercised to discover, either from Commodity or from other sources, who had received delivery of the cotton under the reassignments. The information apparently could have been secured from Commodity, but even if it could not, it should at any time have been an easy matter to ask Gash and Bryant about it. Gash and Bryant were local farmers, their names were on the assignments held by Scroggin and they were designated thereon as the producers of the cotton and the assignors from whom Scroggin traced its claim; Scroggin knew that any reassignments that existed must have been made, under the ''Form R'' set-up, immediately by Bryant and Gash. The fact was that Bryant and Gash had made their second assignments to Howell, and he had reassigned to no one else. Yet there is no evidence in the record that Scroggin ever inquired of Bryant and Gash who their assignee was. We cannot say that the Chancellor's finding, that ''by the exercise of due diligence the plaintiff could have ascertained the name of the second purchaser as early as July, 1941,'' is contrary to the preponderance of the evidence.

Our conclusion that the three-year statute of limitations bars the plaintiff's action is substantially supported by the decision in *Scroggin Farms Corporation* v.

574

*McFadden,* (C. C. A., 8th) 165 Fed. 2d 10, a proceeding brought by the same plaintiff, the appellant here, against another defendant whose position was essentially the same as that of the defendant Howell here. The Federal Court sitting in the Eastern District of Arkansas had held that Scroggin's claim against that defendant, for taking delivery of cotton from Commodity under second assignments like those held by Howell, was barred by the three-year statute of limitations. The suit against that defendant had been filed on the same day as was the present suit, and the background of prior diligence by Scroggin was identical. The Circuit Court of Appeals affirmed the judgment of the District Court, saying (at p. 18) : "No decision from Arkansas cited to us appears to be contrary to the generally recognized law that the mere ignorance of his rights on the part of plaintiff suing for conversion of his personal property will not toll the statute of limitations and that a defendant does not commit a concealment by mere silence or failure to publish the fact that he is taking personal property. He must be guilty of some trick or contrivance tending to exclude suspicion or prevent inquiry. There must be reasonable diligence on the part of a claimant to personal property taken in conversion and the means of knowledge are the same in effect as knowledge itself."

The decree of the Chancery Court is affirmed.

Justices McFADDIN, GEORGE ROSE SMITH and DUNAWAY did not participate in the decision of this case.