Robert and Cindy WILSON *v.* GENERAL ELECTRIC CAPITAL AUTO LEASE, INC., and Jones Toyota Volvo

92-616                                    841 S.W.2d 619

Supreme Court of Arkansas
Opinion delivered November 16, 1992
[Rehearing denied December 21, 1992.*]

*Brown, J., not participating.

*Crockett, Brown & Worsham, P.A.*, by: *Richard E. Worsham*, for appellant.

*Wright, Lindsey & Jennings*, for appellee.

JACK HOLT, JR., Chief Justice. The issue in this case is whether the trial court erred in its decision granting summary judgment to General Electric Capital Auto Lease, Inc. (GECAL) and Jones Toyota Volvo (Jones) on a contract to lease.

We find no error and affirm.

In February, 1987, Robert and Cindy Wilson signed a contract to lease a 1987 Toyota Camry from Jones for a period of five years. The contract was later assigned to GECAL.

The Wilsons claimed that Jones' leasing manager, Cliff Wright, made false representations to them that they could return the car to the dealership in three years, two years before the contract ended, and they could walk away not owing anything. They also alleged that Mr. Wright advised them that they would not need to purchase excess mileage coverage over the 75,000 mile limitation contained in the contract since they would be returning the car in three years.

After three years, the car reached the 75,000 mile mark and the Wilsons attempted to return the vehicle. GECAL and Jones would not take it back. The contract contained a clause, "K. Early Termination," which provided a formula for an early termination charge should the party contracting to lease the car want to terminate the contract before the five year term ended.

Three years and four months after executing the contract, the Wilsons filed a complaint in federal court. This case was dismissed and the Wilsons refiled it in Pulaski County Circuit Court alleging intentional misrepresentation and usury. GECAL and Jones replied, among other defenses, that the statute of limitations had run on their claims.

Both GECAL and Jones filed motions for summary judgment which were granted after a hearing. The trial court ruled that the contract was a lease and not an installment sale contract so no usury was practiced; that the Wilsons' claims of misrepresentation were barred by the statute of limitations; and that Mr. Wright's statements were opinion and not fact. Since we agree with the trial court that the Wilsons' claims were barred by the statute of limitations, we restrict our opinion to this issue.

■ The standard of review for summary judgment is whether the evidentiary items presented by the appellee in support of the motion left a material question of act unanswered. *Barraclough* v. *Arkansas Power & Light Co.*, 268 Ark. 1026, 597 S.W.2d 861 (1980). In appeals from the granting of summary judgment, we review facts in a light most favorable to the

appellant and resolve any doubt against the moving party. *Thomas* v. *Sessions*, 307 Ark. 203, 818 S.W.2d 940 (1991). Here, the pivotal question is whether there is any genuine issue of material fact concerning the statute of limitations. *Hickson* v. *Saig*, 309 Ark. 231, 234, 828 S.W.2d 840, 841 (1992).

The applicable statute of limitations to this appeal is three years. Ark. Code Ann. § 16-56-105 (1987). *See Scroggins Farms Corp.* v. *Howell*, 216 Ark. 569, 226 S.W.2d 562 (1950). The Wilsons' argued that although more than three years had elapsed from the contract date until the filing of the first complaint in federal court, Jones and GECAL perpetuated and concealed the intentional misrepresentation of Mr. Wright and thus tolled the statute of limitations. We conclude otherwise.

██ We have long held that where affirmative acts of concealment by the person charged with fraud prevent the discovery of that person's misrepresentations, the statute of limitations will be tolled until the fraud is discovered or should have been discovered with the exercise of reasonable diligence. *Walters* v. *Lewis*, 276 Ark., 286, 634 S.W.2d 129 (1982); *Williams* v. *Purdy*, 233 Ark. 275, 265 S.W.2d 534 (1954); *Meacham* v. *Mid-South Cotton Growers Assn.*, 196 Ark. 78, 115 S.W.2d 1078 (1938). *See also Williams* v. *Hartje*, 827 F.2d 1203 (8th Cir. 1987). We have said that the "classic language on this point in Arkansas" is:

> No mere ignorance on the part of the plaintiff of his rights, nor the mere silence of one who is under no obligation to speak, will prevent the statute bar. There must be some positive act of fraud, something so furtively planned and secretly executed as to keep the plaintiff's cause of action concealed, or perpetrated in a way that it conceals itself. And if the plaintiff, by reasonable diligence,might have detected the fraud, he is presumed to have had reasonable knowledge of it.

*Scroggins Farms Corp.* v. *Howell*, 216 Ark. 569, 572-3, 226 S.W.2d 562, 565 (1950) (quoting *McKneely* v. *Terry*, 61 Ark. 527, 545, 33 S.W. 953, 957 (1896)). The same rationale holds true today.

██ Even assuming that GECAL and Jones actively con-

cealed a fraudulent misrepresentation, and there was no proof of this presented, the statute of limitations was suspended only until the alleged victims of the fraud discovered the fraud or "should have discovered it by the exercise of reasonable diligence." *Talbot* v. *Jansen*, 294 Ark. 537, 744 S.W.2d 723 (1988) (quoting *Hughes* v. *McCann*, 13 Ark. App. 28, 678 S.W.2d 784 (1984)). *See also Wrinkles* v. *Brown*, 217 Ark. 393, 230 S.W.2d 39 (1950); *City Nat'l Bank* v. *Sternberg*, 195 Ark. 503, 114 S.W.2d 39, *cert. denied*, 305 U.S. 614, *reh'g denied*, 305 U.S. 671 (1938). The depositions of Robert and Cindy Wilson filed with the court revealed that the Wilsons did discover or should have discovered the alleged fraudulent misrepresentations, and so there was no genuine issue of material fact concerning the running of the statute of limitations. The Wilsons made no effort to read the clause on the back of the contract which would have contradicted the "claims" purportedly made by Mr. Wright. Mr. Wilson testified:

Q. Did you ever read the document after Mr. Wright handed it to you?

A. No, I did not. Well, it was never handed to me. I signed it, but actually carrying it around with me, I did not.

Q. Have you ever read it, to this day?

A. To this day, I have—just recently, I've looked over the back of it. When my wife said something about what kind of payoff we had on the thing and after she discovered that there was (sic) some things pertinent to us, I kind of looked over it a little bit, but as far as actually having read every word on the back, I still haven't.

Q. Now, you've heard your wife indicate that at about the 24-month period in the lease, she inquired of GECAL and that was the first time she was aware that there was something on the back of the—or on the reverse side of the document.

A. Right.

Q. Did you become aware at that same time that there was language on the other side of the lease?

A. I was aware to the point that I knew that there was some printing of some kind on the back the day we did the deal. Now, as

far as I—I did not know there was anything that I should be aware of or be made aware of on the back of it. You know—I just assumed it was like a lot of other forms that have—for lack of a better word—a bunch of crap on the back—that other documents we've signed have been like. But I did know that there was some printing on the back of it.

■ Mrs. Wilson testified that she had "just stuck [the contract] in her purse and left" the dealership after it was signed, then "stuck it in [her] drawer at home." Most importantly, Mrs. Wilson testified that two years after the contract was signed, she called GECAL and was advised about the early termination change and then immediately read the termination provision section of the lease. Nevertheless, it was one and a half years after she called GECAL and over three years after the contract was signed before the Wilsons filed any complaint.

In sum, the Wilsons did not fulfill their duty to exercise reasonable diligence in examining the contract they executed to uncover what they alleged was a fraudulent misrepresentation by the leasing manager, so they cannot now complain that the statute of limitations should have been tolled. To the contrary, the evidence shows that they knew or should have know of the contract's actual provisions, so there was no genuine issue of material fact precluding summary judgment.

Affirmed.

BROWN, J., not participating.