**Daniel K. SCHIEFFLER, Trustee of Paul and Joyce Miller's Chapter 7 Bankruptcy Estate, Plaintiff–Appellant,**

v.

**FINANCIAL SERVICES INSURANCE COMPANY OF TENNESSEE; Deutz–Allis Corporation, Defendants–Appellees.**

No. 93–4075.

United States Court of Appeals,
Eighth Circuit.

Submitted June 15, 1994.

Decided Oct. 21, 1994.

Yugoslavia, as the country to which Mr. Demirovski will be deported. *See Osmani v. INS,* 14 F.3d 13, 15 (7th Cir.1994).

Robert J. Donovan, Marianna, AR, for appellant.

Thomas S. Stone, Little Rock, AR, additional atty. appearing on the brief, was Patrick Hollingsworth, for appellee.

Before ARNOLD, Chief Judge, GIBSON, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

The trustee for the bankruptcy estate of Paul and Joyce Miller[1] appeals the district court's granting of summary judgment in favor of Financial Services Insurance Company of Tennessee ("FSIT") and Deutz–Allis Corporation ("Deutz–Allis"). We reverse and remand for further proceedings.

## I. BACKGROUND

The Millers owned and operated Russell Tractor, an authorized Deutz–Allis retailer and service center located in Eastern Arkansas. As part of the dealership agreements between the Millers and Deutz–Allis, the company agreed to provide them with "all risk" insurance. The Millers claimed that this insurance was intended to cover the entire value of the new and used equipment and parts that were either financed through or purchased from Deutz–Allis. In support of this contention, the Millers relied on the insurance provisions in two dealer sales and service agreements (the "Dealer Agreements") effective February 1, 1987. The Dealer Agreement entitled "Schedule of Terms and Discounts for Farm Equipment" provided in relevant part:

14. INSURANCE

The Company will provide "all-risk" insurance (subject to the normal exclusions and limitations) on new machinery and accessories purchased from the Company, for which the Company has not received full

---

1. The Millers filed for bankruptcy after commencing this lawsuit, and the bankruptcy trustee was substituted as the real party in interest. For the sake of convenience, we will refer to the Millers as the appellants.

settlement in an amount equivalent to the actual cost of such machinery and accessories to the Dealer.

The Company will provide "all-risk" insurance (subject to the normal exclusions and limitations) on the used machinery floor planned with the Company, in an amount equivalent to the actual cash value of such used machinery.

All such insurance shall terminate as to any insured item when sold by the Dealer or when the Company's interest in the item is satisfied.

A summary of the aforesaid coverage, specifying the hazards protected against, will be supplied to the Dealer upon request.

The Dealer Agreement entitled "Schedule of Terms and Discount for Lawn and Garden Equipment" contained the above insurance provision, with the exception of the paragraph dealing with used machinery. Neither of these Dealer Agreements mentioned coverage for parts.

In addition to the Dealer Agreements, the Millers were provided with an "Advice of Insurance," which specified:

> This is to advise you that ... Financial Services Insurance Company of Tennessee does insure Deutz–Allis Corporation on new manufactured products (excluding parts carried by the Dealer) of the insured sold under Farm Equipment and/or Lawn and Garden Equipment Dealer Sales and Service Agreements covering the interest of the insured to the extent of the invoice price and on used machinery to the extent of the actual cash value.

On December 14, 1987, a tornado struck Russell Tractor, destroying the business and most of its inventory. Deutz–Allis representatives assessed the property damage and credited the Millers for a portion of the unpaid balance on their floor plan accounts. However, the company refused to compensate the Millers or make any adjustments on their accounts for their personal losses on the floor-planned merchandise. Deutz–Allis

claimed that it had only agreed to insure the unpaid balance on the floor plan accounts and that the Millers should have insured their own interests. The Millers contended that Deutz–Allis had agreed to provide them with "all-risk" insurance and that the company was liable for their losses on all the new and used equipment and parts.[2]

On November 26, 1990, Deutz–Allis brought a claim against the Millers for the outstanding balance on their floor plan accounts. A few days later, the Millers brought a separate lawsuit against Deutz–Allis, claiming entitlement to insurance benefits under the Dealer Agreements. These two cases were consolidated and heard by a special master. During the course of those proceedings, counsel and representatives for Deutz–Allis notified the Millers that their insurance claim was being improperly pursued and that the claim should be brought directly against its insurer, FSIT.

The tornado had destroyed the Millers' paperwork, including the Dealer Agreements and the Advice of Insurance letter. At that point in time, the Millers were unaware of the relationship between Deutz–Allis and FSIT and had never been given copies of the FSIT policies. Relying on Deutz–Allis' representations, the Millers withdrew their claim. On December 23, 1992, judgment was entered against the Millers in the sum of $46,952.56.

On July 21, 1992, the Millers filed a complaint against FSIT in Crittenden County Circuit Court, and the case was removed to federal court. On February 8, 1993, the Millers motioned for leave to amend their complaint to assert claims against Deutz–Allis.

Specifically, the Millers alleged that they were either insureds or third-party beneficiaries under two insurance contracts between Deutz–Allis and FSIT. The first policy, entitled "Floor Plan Stock Floater" ("FSIT 1405–1"), provided:

---

2. The Schedule of Terms & Discounts effective January 15, 1988, (and the corresponding Advice of Insurance) agreed to provide coverage on parts. The Millers argue that this change went

into effect only a month after their losses and that they should be allowed to benefit from this additional language; however, we find this argument unavailing.

5. Covered Equipment:

This policy covers new and used equipment under Floor Plan Agreements with Deutz–Allis dealers in the United States ... consisting of tractors, combines, and other related goods *including interest of dealers (if any)* but only to the extent reported to the company at the time of loss.

(emphasis added).

Deutz–Allis admitted that it obtained this policy in response to its obligation under the Dealer Agreements, but argued that the Millers were not the named insureds or the intended beneficiaries under FSIT 1405–1. Deutz–Allis claimed that this policy was only designed to protect its security interest in the merchandise and that it merely provided an incidental benefit to the Millers in reducing the balance on their floor plan accounts.

The Millers also claimed that their losses were covered under an "All–Risk Equipment Policy" ("FSIT 121278"), which was purchased by Deutz–Allis and Deutz Corporation from FSIT in October 1985. This policy listed the named insureds as: "Deutz Corporation, Deutz Credit Corporation and all allied affiliated subsidiary companies, firms or corporations as now or hereinafter constituted for which Deutz Corporation has the responsibility for placing insurance." FSIT 121278 covered all equipment located in the United States and excluded "[l]oss or damage to any property after the date of receipt of payment of principal in full." The Millers argued that as a result of the January 1986 consolidation between Deutz–Allis and Deutz Corporation, Deutz Corporation had assumed liability on Deutz–Allis' obligation to provide them with "all risk" insurance. Therefore, Russell Tractor and the Millers were a company or firm for which Deutz Corporation had the responsibility to provide insurance, and FSIT 121278 fulfilled this contractual obligation.

Finally, the Millers had discovered that FSIT was a "captive" insurance company and that Deutz–Allis was its "parent" corporation. Deutz–Allis exercised total control over FSIT's management and activities, and FSIT was actually an alter ego for Deutz–Allis.[3]

Therefore, Deutz–Allis and FSIT were both liable on the insurance policies and for their fraud, bad faith, and concealment in their dealings with the Millers.

The district court concluded that neither Russell Tractor nor the Millers were insureds or intended beneficiaries under either of the FSIT policies. Consequently, the court granted summary judgment in favor of the defendants. The Millers appeal.

## II. DISCUSSION

### A. The Insurance Policies

#### 1. The Floor Plan Agreement ("FSIT 1405–1")

■ Relying on this Court's analysis in *Peacock & Peacock, Inc. v. Stuyvesant Ins. Co.*, 332 F.2d 499 (8th Cir.1964), the district court found that FSIT 1405–1 was designed to protect the financing organization and that any benefit to the borrowers was indirect and secondary. We review the district court's grant of summary judgment de novo. *McKee v. Federal Kemper Life Assurance Co.*, 927 F.2d 326, 328 (8th Cir.1991). Because this is a diversity case, we also review the district court's determination of state law de novo, giving no deference to the court's decision. *Salve Regina College v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

The defendants contend that our decision in *Peacock* dictates that we affirm the district court's judgment. We disagree. In *Peacock*, the policy insured " 'the interest, if any, of GENERAL MILLS, INC. and such Poultry Feed Dealers of GENERAL MILLS, INC. as may be endorsed hereon as additional Assureds(s)....' " 332 F.2d at 500. We determined that Peacock was not a poultry feed dealer and was never endorsed as an additional insured under the policy. *Id.* However, in this case, Deutz–Allis agreed to provide the Millers with "all risk" insurance, and FSIT 1405–1 expressly covered the "interest of dealers." There is no dispute that the Millers were Deutz–Allis dealers and that FSIT specifically provided for their interests.

---

**3.** Deutz–Allis admits that FSIT had an exclusive relationship with Deutz–Allis and did not sell insurance to the public. However, Deutz–Allis claims that FSIT was not a Deutz–Allis subsidiary at the time the Dealer Agreements were entered or at the time of the Millers' losses.

These facts alone distinguish this case from *Peacock*.

Furthermore, we find that the language "including interest of dealers" is unambiguous and that the Millers were intended beneficiaries under this policy. *See Southall v. Farm Bureau Mut. Ins. Co.*, 276 Ark. 58, 632 S.W.2d 420, 421 (1982) (In the absence of an ambiguity in a material term, construction of an insurance policy is a question of law for the court to determine.). Deutz–Allis admits that FSIT 1405–1 was purchased in response to its obligation to provide "all risk" insurance. The defendants also acknowledge that the "interest of dealers" language protected the dealer's financial interests, but argue that the dealer was only intended to be an incidental beneficiary.[4] In light of the plain meaning of "including interest of dealer," we do not find this explanation plausible.[5] After "a careful analysis of the agreement between [FSIT and Deutz–Allis], of the purpose of that agreement, and of the end the parties were desiring to achieve," *Peacock*, 332 F.2d at 503, we conclude that the Millers were the intended beneficiaries under this policy. Specifically, we find that FSIT 1405–1 covered the Millers' personal interest in the new and used equipment under floor plan agreements with Deutz–Allis.

## 2. The "All–Risk" Equipment Policy ("FSIT 121278")

■ The court found that FSIT 121278 was unambiguous and that the Millers had failed to prove that Russell Tractor was an "allied affiliated subsidiary, company, firm, or corporation of Deutz Corporation, Deutz Credit Corporation, or Deutz–Allis Corporation." However, at this stage in the litigation, the Millers do not need to prove this disputed issue in their favor; they only need to show evidence of a material factual dispute. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). The relationship between Deutz–Allis and Deutz Corporation, as well as the relationship between Deutz–Allis and FSIT, are all in dispute. Therefore, summary judgment is inappropriate on Deutz Corporation's assumption of Deutz–Allis' obligation to provide "all risk" insurance to its dealers.[6]

## B. Res Judicata and Statute of Limitations

■ Although the district court's decision was not based on these grounds, the defendants argue that the Millers' claims are barred under the doctrine of res judicata and by the statute of limitations. In the proceedings before the special master, the Millers voluntarily dismissed their compulsory counterclaim against Deutz–Allis. They are now precluded from asserting claims that rose out of the same agreements as in the prior litigation. Despite the fact that FSIT was not a party in that case, the defendants urge us to accept the Millers' allegations that Deutz–Allis and FSIT are actually the same corporation. Therefore, FSIT should be considered an "opposing party" for the purposes of Fed.R.Civ.P. 13(a)[7] and under the doctrine of res judicata. The defendants also argue that the Millers' contract claims are time-barred because Deutz–Allis was not added as a defendant until more than five years after the loss was payable on the insurance policies, Ark.Code Ann. § 16–56–111 (Michie 1987), and that their tort claims are precluded under Arkansas' three-year statute of limitations. *Id.* § 16–56–105.

In response, the Millers claim that Deutz–Allis: (1) informed them that it had fulfilled its contractual duty and had purchased insur-

---

**4.** The defendants argue that the Advice of Insurance letter clearly informed the Millers that the policy insured Deutz–Allis, and the letter contains no reference to the interest of dealers. The defendants' reliance on the Advice of Insurance is misplaced; the letter states that it was "merely a memorandum" and "[a]ll rights emanate only from the policy and not from th[e] Advice of Insurance." *See Peacock*, 332 F.2d at 504.

**5.** In fact, the defendants' own policy drafter testified that the inclusion of the phrase was intended

"[t]o protect the dealer for any financial interest he may have had in equipment covered under this policy."

**6.** Because of our holding, we need not address the Miller's waiver and estoppel and equitable subrogation arguments.

**7.** "A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party...."

ance from FSIT; (2) encouraged them to dismiss their original claim; (3) misled them into believing that Deutz–Allis representatives did not have copies of the FSIT insurance policies; and (4) failed to divulge the true relationship between Deutz–Allis and FSIT.[8] They argue that because of the defendants' misrepresentations in the prior proceedings, res judicata and the statute of limitations should not bar their claims.

Res judicata is an issue of substantive law requiring the application of state law in diversity actions. *McDonald v. Johnson & Johnson*, 776 F.2d 767, 769–70 (8th Cir.1985). The Arkansas Supreme Court has described res judicata as a "rule of justice ... [that] is to be applied in particular situations as fairness and justice require and that it is not to be applied so rigidly as to defeat the ends of justice or so as to work an injustice." *Arkansas Louisiana Gas Co. v. Taylor*, 314 Ark. 62, 858 S.W.2d 88, 90–91 (1993) (quotation omitted). An adverse judgment, "free from fraud or collusion," prevents a second claim involving the same issues. *Wells v. Heath*, 269 Ark. 473, 602 S.W.2d 665, 668 (1980).

We believe that it would be an injustice to allow the defendants to benefit from their deception and concealment. Incredibly, the defendants argue on the one hand that FSIT is a separate legal entity, and on the other, that Deutz–Allis and FSIT should be considered together for purposes of their compulsory counterclaim and res judicata arguments. We believe that the Millers have demonstrated a genuine issue of material fact concerning the true nature of the relationship between Deutz–Allis and FSIT. We leave it to the district court to sort out their individual and joint liability for the Millers' claims.

Normally, "in a statute of limitations context fraudulent concealment and a plaintiff's due diligence are questions of fact unsuited for summary judgment." *Hines v. A.O. Smith Harvestore Prods., Inc.*, 880 F.2d 995, 999 (8th Cir.1989). Under Arkansas law, affirmative acts of concealment toll the statute of limitations until the fraud is discovered or should have been discovered with the ex-

ercise of reasonable diligence. *See Wilson v. General Elec. Capital Auto Lease, Inc.*, 311 Ark. 84, 841 S.W.2d 619, 620–21 (1992). Contrary to the defendants' arguments, their conduct rose to more than mere silence about the relationship between Deutz–Allis and FSIT. The defendants induced the Millers to dismiss their original claim and to pursue FSIT, and then turned around and argued that FSIT did not insure the Millers' interests. We are persuaded there is evidence that the defendants' misconduct tolled any potential statute of limitations problem in this case.

### C. The Tort Claims

The district court summarily dismissed the Millers' tort claims without reaching the merits of these issues. In light of the above discussion and our concern about the allegations of the defendants' misconduct in this case, we remand these claims.[9]

### III. CONCLUSION

For the foregoing reasons, we reverse the district court's judgment and remand this case for further proceedings consistent with this opinion.

---

8. The Court notes that the attorney who presented this case on appeal is not the counsel who represented the defendants in the prior proceedings.

9. The Millers' remaining allegations of error are moot.