Maria J. WALTERS and Cristina WALTERS
*v.* Ola Jean LEWIS et al

81-262                                            634 S.W.2d 129

Supreme Court of Arkansas
Opinion delivered June 7, 1982

*Terry R. Kirkpatrick,* for appellants.

*Walter B. Cox* of *Davis, Cox & Wright,* for appellees.

JOHN I. PURTLE, Justice. The Washington County Chancery Court dismissed appellants' complaint wherein they sought to have the estate of the decedent, Walter G. Walters, recovered and partitioned for their benefit as widow and sole surviving child.

Maria Walters, as widow, and Cristina Walters, as only surviving child of Walter G. Walters argue three points on appeal. First, they allege the chancellor erred in applying Ark. Stat. Ann. § 62-2902.1 to the facts of this case. Second, they contend that the court erred in finding the above statute barred their claim even if it was applicable. Third, it was argued that the court erred in dismissing the purchasers of the decedent's land from the case.

The facts reveal that Maria and Walter G. Walters were married in Guadalajara, Mexico on December 23, 1964, residing there for a number of years. Decedent adopted his wife's daughter, Cristina, on May 17, 1967, while all three still lived in Mexico. The family visited Mr. Walters' relatives in Washington County, Arkansas on a fairly regular basis until December 1969 when the decedent returned to the United States to renew his visa. However, he never returned to Mexico. Plaintiffs and the decedent corresponded fairly regularly at first but later only sporadically. Through the Walters' various visits in this country the appellees were all aware that Maria and Walter were married and represented themselves to be man and wife.

On February 23, 1976, Walter G. Walters died intestate in Washington County, Arkansas. About March 16, 1976, Ola Jean Lewis, sister of the decedent, filed an action in probate which resulted in her appointment as personal representative of the decedent's estate. She listed only the brothers, sisters, nieces and nephews of the decedent as his surviving relatives. She listed neither Maria nor Cristina as relatives although she knew that Walter and Maria had been married in Mexico. She had Maria's address, which was the same since she married Walter in 1964. On October 5, 1976, Ola Jean Lewis caused the distribution of the estate and had it closed. Prior to closing the estate she sold property to her relatives, the Groces, for the sum of $8,000. She had obtained permission of the court to sell the property. The appellants were not notified of the closing of the estate.

Christmas, 1977, Maria sent Walter a Christmas card. It was returned to her in Mexico with the written notation on the envelope, "deceased." The envelope bore a Guadalajara

postmark dated January 11, 1978. Shortly thereafter Maria wrote Ola Jean Lewis a letter inquiring about Walter. Maria claimed she wrote several letters in 1978 and denied receiving any response. Ola Jean Lewis admitted she received one letter from Maria but decided not to answer because she didn't think Maria had shown enough interest in the decedent. Sometime in July, 1979, Maria was able to go to Chicago to visit a relative, and while there she applied for social security benefits as the widow of Walter G. Walters. She presented the returned Christmas card to the authorities and explained she had written the Bureau of Vital Statistics of the State of Arkansas and requested a death certificate if one was on file. This action was taken at the request of the American Consul in Mexico. A three dollar check was enclosed with the request for the death certificate but neither the certificate nor the money were ever returned. There is no question but that on March 31, 1980, Maria learned that Walter was dead. This is the date she commenced receiving social security widow's benefits. In October of 1980, appellant was able to go to Washington County, Arkansas where she learned that her late husband's estate had been distributed to his relatives. She filed the present suit on January 23, 1981 and the court rendered its decision on August 31, 1981, finding constructive fraud on the part of appellee, and dismissing appellants' complaint due to the running of the statute of limitations.

We first consider the question of whether Ark. Stat. Ann. § 62-2902.1 (c) (Supp. 1981), Ark. Stat. Ann. § 62-2912 (Repl. 1971), or Ark. Stat. Ann. § 37-213 (Repl. 1962) applies to the facts in this situation. Under the foregoing statutes we find that the claim of the appellants is not barred. We so find because the personal representative breached her duty of trust and was guilty of fraud in: 1) failing to notify the appellants of Walter's death, 2) failing to disclose to appellants her appointment as personal representative, and 3) failing to advise appellants when the estate was closed. Further, appellee, Ola Jean Lewis, perpetrated a fraud upon the court by leaving appellants' names off the list of heirs as required by her position of administratrix to the estate. We find no basis for the excuse used that she thought Maria had divorced Walters. Maria had lived at the same address all of

the time since the administratrix had become acquainted with her. She even admitted receiving a letter from Maria Walters sometime in 1978 but decided not to answer it.

We agree that the statute of limitations must commence to run at some time. Therefore we look to prior decisions for guidance in this area. We considered a matter relating to the tolling of a statute of limitations based on grounds of fraud in *Williams* v. *Purdy*, 223 Ark. 275, 265 S.W.2d 534 (1954), where we stated:

> Mere ignorance of one's rights does not prevent the operation of the statute of limitations, but where the ignorance is produced by affirmative and fraudulent acts of concealment, the statute of limitations does not begin to run until the fraud is discovered.

Silence on the part of one who is under no duty to speak will not prevent the statute from running. However, if there is some positive act of fraud which would conceal a plaintiff's cause of action then the statute is tolled, *Williams* v. *Purdy*, supra. There must be some affirmative action on the part of the person charged with fraud before the statute will be tolled. *Nicklaus* v. *McClure*, 244 Ark. 23, 423 S.W.2d 562 (1968). In the case of *Wrinkles* v. *Brown*, 217 Ark. 393, 230 S.W.2d 39 (1950) we stated:

> The cases hold that in actions to recover money paid because of fraud, the cause of action accrued when the fraud was discovered, or should have been discovered, with the exercise of reasonable diligence.

We find that the personal representative committed fraud by failing to notify the appellants of her appointment and by not listing them as heirs on her petition for letters of administration. We think the appellants were put on notice requiring them to investigate the matter in January of 1978 when the Christmas card was returned with "deceased" written on the envelope. Maria immediately wrote the presonal represenative who intentionally refused to respond. She contacted the American Consulate in Mexico and was told to write the Bureau of Vital Statistics in Little

Rock. She did not receive a death certificate nor was her money refunded. We think she used due diligence in investigating Walter's death after having been put on notice that he may have been dead. She received no cooperation from the people who were in the best position to assist her. Maria Walters was able to get to Chicago in July of 1979 at which time she applied for social security benefits as the widow of Walter G. Walters, perhaps with the idea in mind that this would resolve once and for all the question of whether he was deceased. We think she had learned at this time or learned during this proceeding that her husband was dead. She would have known positively that he was dead in March of 1980 when she received a social security check as the surviving widow.

In essence, this is a suit for damages based on the fraudulent actions and inactions of the personal representative of the estate. We find that there was a duty on the part of the personal representative to notify the appellants of her appointment and of the closing of the estate. We also hold that there was a duty on the part of the appellants to verify the death of the decedent. We think that these duties on the part of the respective parties were resolved in July, 1979, when Maria applied for social security benefits. The fact that she did not actually learn of the distribution of the estate until October 1980 may be attributed to her failure to proceed in a more reasonable manner. Since we hold that the statute of limitations commenced to run in July of 1979 when the fraud was discovered the appellants were well within the time limits in filing their action pursuant to any of the foregoing statutes.

Appellants also argue that the court erred in dismissing the purchasers of the real property from the action. We agree with the chancellor's holding in regard to this portion of the case because the purchasers were in no way responsible for the fraudulent acts of the personal representative and, from the record as we see it, were bona fide purchasers for value, without notice of a defect in the title.

The case is remanded to the trial court with directions to enter the appropriate judgment against the personal repre-

sentative and her surety, Fidelity and Deposit Company. The decree as to all other defendants is affirmed.

Affirmed in part, reversed in part, and remanded.