# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2814

_____

Richard L. Varner, Jr., on behalf    *
of himself and others similarly    *
situated; Kathleen E. Varner, on behalf    *
of herself and others similarly    *
situated; Richard L. Varner, on behalf    *
of himself and others similarly situated;    *
Louise Varner, on behalf of    *
herself and others similarly situated,    *
   *
      Appellants,    *    Appeal from the United States
   *    District Court for the
     v.    *    Western District of Arkansas.
   *
Peterson Farms; Decatur State Bank;    *
Terrel L. Shields,    *
   *
      Appellees.    *

_____

Submitted: January 15, 2004
Filed: June 16, 2004

_____

Before BYE, HEANEY, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

     Richard Varner Jr., Kathleen Varner, Richard Varner Sr., and Louise Varner (collectively referred to as "the Varners") sued Peterson Farms ("Peterson Farms"), Decatur State Bank ("Decatur Bank"), and Terrel L. Shields alleging claims for fraud,

civil conspiracy, unjust enrichment, and violations of the Sherman Antitrust Act and the Packers and Stockyard Act. The Varners appeal the district court's[1] order dismissing their Packers and Stockyard Act, Sherman Antitrust Act, fraud and civil conspiracy claims because of the applicable statute of limitations and their unjust enrichment claim for failure to state a claim. We affirm.

## I. *Background*

In October 1996, Richard Jr. and Kathleen Varner borrowed $258,000 from Decatur Bank to purchase and upgrade real estate they planned to use for poultry production. As part of the loan agreement, Decatur Bank provided them with a document titled "Projected Cash Flow for Agricultural Enterprises" that estimated their future annual net income from poultry production at $27,594.18. Shields, an appraiser, verified the value of the property. Richard Sr. and Louise Varner entered into a similar agreement with Decatur Bank. With the appraisals and loan agreements, the couples entered into growing contracts with Peterson Farms for the production of "broilers," a type of market poultry. Unfortunately, the Varners were unable to meet their interest obligations with Decatur Bank, which caused them to borrow additional monies from Decatur Bank to cover interest payments and living expenses. After taking out numerous loans, they ended the ventures and abandoned the contracts.

Decatur Bank filed foreclosure actions against the Varners in late 2000. Judgments and decrees of foreclosure were issued in favor of Decatur Bank on February 16 and 20, 2001, and the property was subsequently sold. Louise and Richard Sr. separately filed for bankruptcy. Decatur Bank obtained relief from the automatic bankruptcy stays, and the Varners were subsequently discharged from bankruptcy.

---

[1] The Honorable Jimm Larry Hendren, Chief Judge, United States District Court for the Western District of Arkansas.

The Varners brought this action on May 28, 2002, in federal district court in Arkansas[2] asserting claims for securities fraud, common-law fraud, and violations of RICO and the Sherman Antitrust Act. After two amended complaints, the district court dismissed the Varners' RICO and securities fraud claims. The district court allowed the Varners to amend their complaint to replead their antitrust and fraud claims in a final effort to avoid dismissal. The third amended complaint contained claims for common law fraud, civil conspiracy, unjust enrichment, and antitrust violations under the Sherman Antitrust Act and the Packers and Stockyard Act.[3]

In their complaint, the Varners indicated that, after the foreclosures in 2001, they located a person who had worked previously as a loan officer at Decatur Bank. The Varners claimed that this former loan officer indicated that the projected cash-flow figures were false and misleading. In addition, the former loan officer indicated that Decatur Bank and its officer, Vernon Austin, knew of the false and misleading nature of the information, yet used it to entice people to enter into mortgages for poultry farms. The Varners summarized this allegation in the complaint by stating, "Although Plaintiffs were suspicious that the figures given to them were fraudulent, this was the first evidence that the Plaintiffs could obtain to prove their suspicions."

---

[2] Shields, Decatur Bank, and Peterson Farms make their primary places of business in the State of Arkansas.

[3] Specifically, the Varners claimed that Shields's appraisal was misleading, fraudulent, and made with reckless disregard for the truth and was based upon the amount of debt owed to Decatur Bank by the former owners and sellers rather than on the value of the property. The Varners contend that the appraisal was made with the intent to induce them to purchase the property and that they justifiably relied on the appraisal when entering into the loan agreements. In addition, the Varners claimed that the figures contained in the Projected Cash Flow document were also fraudulent and made in an effort to "lure" the Varners into "purchasing a farm loaded with debt."

On June 5, 2003, pursuant to Peterson Farms's and Decatur Bank's motions, the district court dismissed the third amended complaint with prejudice. The district court determined that the claims were barred under the applicable statutes of limitations because each of the allegedly fraudulent documents upon which the Varners relied (Shields's appraisals, Decatur Bank's Projected Cash Flow statements, and Peterson's broiler growing contracts) were provided to the Varners in 1996, well beyond the limitations periods for each claim. The district court also concluded that the Varners' claim for unjust enrichment failed as a matter of law because this equitable doctrine did not apply where valid, legal, and binding contracts existed. The Varners appeal the district court's dismissal with prejudice of all claims.

## II. *Analysis*

The Varners argue that the district court erred in dismissing their complaint with prejudice after finding that the statutes of limitations ran on their state and federal claims. It is undisputed that unless the applicable limitations periods are tolled the Varners' claims are barred. We review de novo a district court's grant of a motion to dismiss, applying the same standards as the district court. *Kottschade v. City of Rochester*, 319 F.3d 1038, 1040 (8th Cir. 2003). "All facts alleged in the complaint are taken as true and construed in the light most favorable to the plaintiff." *Id.* However, like the district court, we are "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002).

Generally, a motion to dismiss may be granted when a claim is barred under a statute of limitations. Fed. R. Civ. P. 12. In order for a party to avail itself of this defense, the party must specifically plead the defense in its answer. However, while this failure would normally result in the waiver of a limitations defense, *see, e.g., Myers v. John Deere Ltd.*, 683 F.2d 270, 273 (8th Cir. 1982), we recognize that when it "appears from the face of the complaint itself that the limitation period has run," a

-4-

limitations defense may properly be asserted through a Rule 12(b)(6) motion to dismiss. *Wycoff v. Menke*, 773 F.2d 983, 984–985 (8th Cir. 1985). Under Arkansas law, as well, the defendant has the burden to affirmatively plead a statute-of-limitations defense. *First Pyramid Life Ins. Co. of America v. Stoltz*, 843 S.W.2d 842, 844 (Ark. 1992). However, if it is clear from the face of the complaint that the action is barred by the applicable limitations period, the burden shifts to the plaintiff to prove by a preponderance of the evidence that the statute of limitations was in fact tolled. *Id.*

A. *Dismissal of the Arkansas Fraud, Civil Conspiracy,*
*and Unjust Enrichment Claims*

The Varners first claim that the district court erred by dismissing their state law claims for fraud, civil conspiracy, and unjust enrichment. Upon review of these causes of action and the pleaded facts, we conclude that the district court properly granted the appellees' motions to dismiss.

The Varners complain that Decatur Bank, Peterson Farms, and Shields committed fraud and civil conspiracy by enticing potential poultry growers to contract with them by providing false and misleading information in documents and through representations by employees of the companies. They further claim that the appellees were unjustly enriched by these contractual arrangements. Under Arkansas law, a cause of action for fraud is governed by a three-year statute of limitations. Ark. Code Ann. § 16-56-105 (1987). As such, civil conspiracy–which is not a separate tort and must be based on the underlying tortuous activity–borrows its statute of limitations from the fraud cause of action. The statute of limitations begins to run–in the absence of concealment of the wrong–when the negligence occurs, not when the negligence is discovered. *Smothers v. Clouette*, 934 S.W.2d 923, 925–926 (Ark. 1996).

In order to toll the statute of limitations, there must be a fact question of "some positive act of fraud, something so furtively planned and secretly executed as to keep

the plaintiff's cause of action concealed, or perpetrated in a way that it conceals itself." *Martin v. Arthur,* 3 S.W.3d 684, 687 (Ark. 1999) (citations omitted). Where affirmative acts of concealment by the person charged with fraud prevent the discovery of that person's misrepresentations, the statute of limitations will be tolled until the fraud is discovered or should have been discovered with the exercise of reasonable diligence. *Williams v. Hartje*, 827 F.2d 1203, 1205–1206 (8th Cir. 1987) (citing *Walters v. Lewis*, 634 S.W.2d 129, 132 (Ark. 1982)); *Wilson v. General Elec. Capital Auto Lease, Inc*., 841 S.W.2d 619, 620 (Ark. 1992).

Arkansas courts hold that "[a]lthough the question of fraudulent concealment is normally a question of fact that is not suited for summary judgment, when the evidence leaves no room for a reasonable difference of opinion, a trial court may resolve fact issues as a matter of law." *Alexander v. Flake*, 910 S.W.2d 190, 191 (Ark. 1995). Concealment of facts, no matter how fraudulent or otherwise wrongful, has no effect on the running of a statute of limitations if the plaintiffs could have discovered the fraud or sufficient other facts on which to bring their lawsuit, through a reasonable effort on their part. *Walters*, 634 S.W.2d at 132.

Applying the relevant limitations statute, Arkansas law required the Varners to either show that they did not–and could not–discover the alleged fraud until after talking with the former loan officer, or show that Peterson Farms and Decatur Bank did something overt or failed to act when they should have. *Williams,* 827 F.2d at 1205–1206; *Wilson,* 841 S.W.2d at 620; *Walters,* 634 S.W.2d at 132. However, the Varners–in three attempts at pleading their causes of action–failed to show either.

The Varners asserted that they only learned of the alleged fraudulent conduct and misrepresentations from the former Decatur Bank loan officer after the foreclosure actions and added:

The information known to this person [a former loan officer] was not information that was disseminated publicly by Defendant Bank or Defendant Peterson. Decatur, Arkansas is a small town, and Defendants Peterson and Bank are its major employers. The information relating to this fraudulent conduct was not published by persons employed by Defendant Bank or Defendant Peterson due to the potential for retribution. Plaintiffs seek to discover names and addresses of other former employees to develop this fact further.

However, the Varners also included in their complaint that "[a]lthough Plaintiffs were suspicious that the figures given to them were fraudulent, this was the first evidence that the Plaintiffs could obtain to prove their suspicions." This added statement noting the Varners' suspicions defeats their claim that the statute of limitations was tolled. Clearly, the Varners suspected that Decatur Bank and Peterson Farms provided allegedly fraudulent information to induce them to contract for property and poultry businesses. However, they failed to act at any time within three years of the contracts' creation. In fact, for nearly six years–from 1996 to 2002–the Varners failed to act with due diligence, despite their suspicions, to discover any facts that could support their fraud or civil conspiracy claims.

The statute-of-limitations inquiry is not subjective–we do not inquire as to when the plaintiffs should have discovered or did discover the alleged fraudulent conduct. *Jackson v. Swift-Eckrich*, 830 F. Supp. 486, 488–489 (W.D. Ark. 1993) (internal citations omitted). Instead, the question is whether the plaintiffs used due diligence to discover the alleged fraud. *Talbot v. Jansen*, 744 S.W.2d 723, 725 (Ark. 1988). The burden is on the plaintiff to exercise due diligence to discover the fraud if apprised of facts that should place the plaintiff on notice. *Jackson*, 830 F.Supp. at 488–489. The beneficiaries' ignorance of their rights does not prevent the operation of the statute of limitations. *First Pyramid Life Ins. Co. of America*, 843 S.W.2d at 845. The statute is tolled only when the ignorance is produced by affirmative and fraudulent acts of concealment. *Id.* The alleged acts of concealment or fraud must

have been committed by those invoking the benefit of the statute of limitations. *Dupree v. Twin City Bank*, 777 S.W.2d 856, 858 (Ark. 1989). We affirm the district court's determination that the Varners did not act with due diligence within the limitations period to toll the statute of limitations for these causes of action.

Finally, we also agree with the district court that under Arkansas law, the doctrine of unjust enrichment does not apply when there is a valid, legal, and binding contract. *Hall Contracting Corp. v. Entergy Services, Inc.*, 309 F.3d 468, 475 (8th Cir. 2002); *Lowell Perkins Agency, Inc. v. Jacobs*, 469 S.W.2d 89, 92–93 (Ark. 1971). To find unjust enrichment, a party must have received something of value, to which he was not entitled and which he must restore. *Guaranty Nat. Ins. Co. v. Denver Roller, Inc.*, 854 S.W.2d 312, 317 (1993). One who is free from fault cannot be held to be unjustly enriched merely because one has chosen to exercise a legal or contractual right. *Id*. Although Arkansas recognizes some exceptions to this general rule, *see Hall Contracting Corp.*, 309 F.3d at 475–476 (citing *Friends of Children, Inc. v. Marcus*, 876 S.W.2d 603, 605 (Ark. App. 1994)), none of those exceptions apply here, and there is no basis for resorting to quasi-contract.[4] *Friends of Children* represents the Arkansas rule for cases involving valid contracts. In this case, the Varners contracted with Peterson Farms and Decatur Bank for property and for poultry-production businesses. The Varners' failure to properly plead that these

---

[4] The Arkansas court in *Friends of Children, Inc.*, 876 S.W.2d at 605, recognized exceptions to the general rule that a claim for unjust enrichment does not apply when there is a legally valid contract. Those exceptions include cases in which there has been a rescission at law, *see e.g.*, *Maumelle Co. v. Eskola*, 865 S.W.2d 272 (Ark. 1993); where a contract has been discharged by impossibility or frustration of purpose, 1 George E. Palmer, *The Law of Restitution* § 1.7 at 42 (1978); or where the parties to a contract find they have made some fundamental mistake about something important in their contract. Dan B. Dobbs, *Handbook on the Law of Remedies* § 4.3 at 256 (1973).

contracts were not legal also defeats their claim for unjust enrichment. Therefore, we affirm the district court's dismissal under Rule 12 of the Varners' state-law claims.

B. *Dismissal on the Federal Sherman Antitrust Act and Packers and Stockyard Act Claims*

The Varners next argue that the district court erred in barring their federal claims due to the applicable four-year statutes of limitations. The Varners claim that, although the contracts and supporting documents were not amended after the initial agreement in 1996, the contracts were "tying" contracts[5] that allowed them to proceed under a "continuing violations" exception sufficient to toll the statutes of limitations. Peterson Farms and Decatur Bank deny that the contracts were "tying" contracts or, in the alternative, that the Varners' complaint did not include a "continuing violations" claim or any overt act that would constitute a continuing violation.

Federal antitrust causes of action are governed by a four-year limitations period. 15 U.S.C. § 15b. Claims under the Packers and Stockyards Act, 7 U.S.C. § 209(b), must also be brought within four years after an action accrues. *Jackson v. Swift-Eckrich, Inc.*, 53 F.3d 1452, 1460 (8th Cir. 1995) (PSA claims are governed by the four-year statute of limitations borrowed from the Sherman Antitrust Act). Generally, the period commences on the date the cause of action accrues, that being, the date on which the wrongdoer commits an act that injures the business of another. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971).

---

[5] A "tying contract" or "tying arrangement" in the antitrust context involves "a seller's agreement to sell one product or service only if the buyer also buys a different product or service." BLACK'S LAW DICTIONARY 1523 (7th ed. 1999); *see also Amerinet, Inc. v. Xerox Corp.*, 972 F.2d 1483, 1498 (8th Cir. 1992). Even if a plaintiff proves a per se tying violation, these claims remain subject to the four-year statute of limitations unless an exception applies.

At least three exceptions, however, permit a party to file a complaint more than four years after the events that give rise to the cause of action. The first exception–the exception the Varners claim is applicable here–involves a continuing conspiracy or continuing violation; it "permits a cause of action to accrue whenever the wrongdoer commits an overt act in furtherance of an antitrust conspiracy or, in the absence thereof, commits an act that by its very nature is a continuing antitrust violation." *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1051 (5th Cir. 1982).[6] A continuing antitrust violation is one in which the plaintiff's interests are repeatedly invaded. *Id.* at 849 (quoting *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 237 (9th Cir. 1987)). "When a continuing antitrust violation is alleged, a cause of action accrues each time a plaintiff is injured by an act of the defendants." *Barnosky Oils, Inc. v. Union Oil Co. of California*, 665 F.2d 74, 81 (6th Cir. 1981). However, "'even when a plaintiff alleges a continuing violation, an overt act by the defendant is required to restart the statute of limitations and the statute runs from the last overt act.'" *Peck v. General Motors Corp.*, 894 F.2d 844, 849 (6th Cir. 1990) (quoting *Pace Indus.*, 813 F.2d at 237). "For statute of limitations purposes, . . . the focus is on the timing of the causes of injury, i.e., the defendant's overt acts, as opposed to the effects of the overt acts." *DXS, Inc. v. Siemens Medical Systems, Inc.*, 100 F.3d 462, 467 (6th Cir. 1996) (citing *Peck*, 894 F.2d at 849).

An overt act has two elements: (1) it must be a new and independent act that is not merely a reaffirmation of a previous act, and (2) it must inflict new and

---

[6] The second common exception involves situations when the wrongdoer's antitrust act is "'revived.'" *Kaiser Aluminum & Chemical Sales, Inc.*, 677 F.2d at 1051 (quoting *Zenith Radio Corp.*, 401 U.S. at 339–340). The cause of action is "'revived' outside the limitations period, as a basis for damages, because when the act originally occurred, [the innocent party's] damages were speculative or unprovable." *Id.* A third common exception is codified at 15 U.S.C. § 16(i). It excludes from the four-year statute of limitations the time during which the wrongdoer is the subject of a civil or criminal proceeding by the United States.

accumulating injury on the plaintiff. *Pace Industries, Inc.*, 813 F.2d at 238. Acts that are merely "unabated inertial consequences"[7] of a single act do not restart the statute of limitations.

The Varners identify two alleged continuing violations: (1) they were required to buy supplies from Peterson Farms or other named entities that benefitted Peterson Farms, and (2) Peterson Farms required new and updated facilities to force the Varners to buy supplies from Peterson Farms or take out loans from Decatur Bank. The Varners acknowledge that the 1996 contracts included these express terms; however, they claim that these contracts constituted unlawful "tying contracts" or "tying arrangements." They assert that each act by Peterson Farms and Decatur Bank constituted an overt act sufficient to toll the running of the statutes of limitations.

We conclude that the Varners failed to plead sufficient facts to support a cause of action for a tying-contract antitrust violation or to establish an exception to toll the statutes of limitations. Performance of the alleged anticompetitive contracts during the limitations period is not sufficient to restart the period. *Eichman v. Fotomat Corp.*, 880 F.2d 149, 160 (9th Cir. 1989) (mere fact that plaintiff made payments to defendant since signing of contract did not establish defendant's ability to enforce the tie absent voluntary cooperation by plaintiff); *Aurora Enter. v. NBC*, 688 F.2d 689, 694 (9th Cir. 1982) ("[T]hat defendants receive a benefit today as a result of a contract executed in 1966 . . . is not enough to restart the statute of limitations."). In addition, when a complaining party was fully aware of the terms of an agreement when it entered into the agreement, an injury occurs only when the agreement is initially imposed; thus, the limitations period typically is not tolled by the requirements placed on the parties under the agreement. *See Information Exchange*

---

[7] *Barnosky Oils*, 665 F.2d at 82 (quoting *Poster Exchange, Inc. v. National Screen Serv. Corp.*, 517 F.2d 117, 128 (5th Cir. 1975)); *cf. Peck*, 894 F.2d at 849 (holding that conduct causing injuries that have a rippling effect into the future does not constitute a continuing violation).

*Systems, Inc. v. First Bank Nat. Ass'n*, 994 F.2d 478, 484 (8th Cir. 1993) (plaintiff knew terms of alleged tying agreement for continued credit when it entered into credit agreement, and claim for fraudulent concealment therefore could not survive). Here, the Varners failed to allege any new overt acts, other than enforcement of the initial contracts, that would toll the four-year statutes of limitations under either Act. Therefore, we affirm the district court's dismissal of the Varners' federal claims.

### III. *Conclusion*

We affirm the district court's dismissal of the Varners' state and federal claims due to the running of the statutes of limitations. Furthermore, we affirm the district court's determination that the Varners' complaint failed to state a cause of action for unjust enrichment under Arkansas law because the Varners failed to assert any facts that could establish that the loans and grower contracts were not valid, legal, and binding contracts.

_____