# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-3573
_____

Michael Spradling, as Personal Representative of the Estate of, William Collin Spradling, Deceased

*Plaintiff - Appellant*

v.

Clay Hastings, Individually and in his Official Capacity; Michael Ford, Individually and in his Official Capacity; Frederick Steve Woodall, "Steve" Individually and in his Official Capacity; Aaron Simon, Individually and in his Official Capacity; Stuart Thomas, Individually and in his Official Capacity; Little Rock, City of, A Municipality

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock
_____

Submitted: September 27, 2018
Filed: January 8, 2019
_____

Before SMITH, Chief Judge, MELLOY and STRAS, Circuit Judges.
_____

SMITH, Chief Judge.

On July 16, 2008, Officers Clay Hastings, Michael Ford, Steve Woodall, and Aaron Simon of the Little Rock Police Department (LRPD) were investigating

William Collin Spradling ("Collin") as a robbery suspect. During the investigation, Collin was shot and killed. Over four years later, on November 5, 2012, Michael Spradling, as the personal representative of Collin's estate, filed suit pursuant to 42 U.S.C. § 1983 against the officers, Little Rock Police Chief Stuart Thomas, and the City of Little Rock (collectively, "defendants"). Spradling alleged that the officers used excessive force resulting in Collins's wrongful death. The defendants moved for summary judgment because Spradling filed his complaint outside of the applicable statute of limitations. The district court[1] granted the motion and dismissed the complaint with prejudice.

On appeal, Spradling does not contest that he filed his § 1983 lawsuit outside of the applicable statute of limitations. *See* Ark. Code Ann. § 16-56-105. Instead, he argues that he presented evidence of fraudulent concealment and conspiracy sufficient to equitably toll the statute of limitations. Because we conclude that the undisputed facts placed Spradling on objective notice of the need to investigate the shooting, we hold that the limitations period was not equitably tolled. Therefore, we affirm the judgment of the district court.

## I. *Background*

On July 16, 2008, Officers Hastings, Ford, Woodall, and Simon responded to 621 Gillette Road to investigate Collin as a robbery suspect. During the investigation, Collin was shot and killed.

On November 5, 2012, Spradling filed this § 1983 lawsuit against the officers, alleging excessive force, in violation of the Fourth and Fourteenth Amendments, and wrongful death and negligence, *see* Ark. Code Ann. § 16-62-102(a) and (b). In addition, Spradling brought a survival claim. *See* Ark. Code Ann. § 16-62-101(a)(1).

---

[1]The Honorable James M. Moody Jr., United States District Judge for the Eastern District of Arkansas.

Spradling voluntarily nonsuited the case and refiled the action on April 23, 2015. In the refiled action, Spradling added Chief Thomas and the City of Little Rock ("City") as defendants and added three additional claims: (1) a claim of failure to train, supervise, or discipline against Chief Thomas and the City; (2) a claim that Chief Thomas and the City permitted a widespread, persistent pattern of unconstitutional conduct; and (3) a civil conspiracy claim against the officers, Chief Thomas, and others. In the refiled complaint, Spradling alleged that the defendants did not disclose many pertinent facts and purposefully hid others following Collin's death.

The defendants moved to dismiss the complaint or, in the alternative, for summary judgment based upon the statute of limitations. In resolving the motion to dismiss, the district court considered attachments and exhibits outside the pleadings. Consequently, it analyzed the defendants' dismissal motion as a summary-judgment motion. *See* Fed. R. Civ. P. 12(d). The district court denied the motion, concluding that genuine issues of material fact existed as to when the statute of limitations began to run on Spradling's claims. The court explained:

> Plaintiff alleges that he obtained the Spradling Use of Force File in 2009. However, that file did not contain certain audio and video recordings which cast doubt on the Defendants' version of the events leading to Collin's death. Until August 22, 2012, Plaintiff believed he possessed the complete and accurate file. Plaintiff claims that the Defendants withheld audio and video recordings from the day of the shooting, falsely transcribed witness statements, tampered with portions of video and audio records in order to destroy evidence, and intentionally gave the Plaintiff inaccurate information about the shooting.

*Spradling v. Hastings*, No. 4:15-cv-00238, slip op. at 4 (E.D. Ark. Nov. 18, 2015), ECF No. 14.

Later, the defendants did move for summary judgment, noting that Spradling filed his initial complaint outside of the applicable statute of limitations. Based on the summary-judgment record, the district court granted the motion. The court noted that on November 4, 2008, Christina Hatfield, a witness to the shooting and the mother of Collins's girlfriend, requested a copy of the case file relating to the shooting from the LRPD. She received a 556-page case file in response to her request. Then, in late November 2008 or early 2009, Spradling received a copy of the 556-page case file along with a letter from Hatfield outlining the inconsistencies she believed existed in the file. Hatfield's letter provides, in relevant part:

> *As I read through the file, I was struck by so many inconsistencies*, that I cannot believe the prosecuting attorney's office didn't even call us for an interview before determining that it wasn't prosecutable, even though I spoke with John Johnson twice, telling him we were available at any time and *believed Collin had been murdered*.
>
> With you not having actually been there, I just wanted to point out a couple of things for you to keep in mind as you go through this, as they try to paint a pretty good case of justifying their actions.
>
> In regards to the homicide:
>
> First and foremost, they all say Simon was yelling, "Gun, Gun, etc." including Det. Gassaway who was in the FRONT yard at the time, yet neither myself, Rachael, nor Paul ever heard them say anything about a gun until later, even though we were standing right there. When you read our statements, you'll see that we were consistent about that, even though we were immediately segregated from each other and never allowed to say a word to each other before our statements were taken.
>
> Simon's Statement:
> Simon said Collin had his hand in his pocket, but when they first went to ground I saw Collin's right hand, as did Rachael, and it was open and empty. Afterwards, there were so many men on him I couldn't see his hands anymore, but if you look at the position of Collin's right hand in

-4-

the picture on page 363, how could Simon have possibly have had his hand on Collin's in his right pocket? Also, he says the gun "dropped" from Collin's hand, but that when he first saw it, it was about 2 feet away? Lastly, he says he moved it to the brick wall to secure it, but the picture again tells a different story. If the gun had dropped from Collin's right hand, wouldn't it have been a lot more secure right where is was, rather than on the wall, since Rachael and I were sitting on the back step and Paul was on the other side of the patio furniture?

Lundy's Statement:
Lundy confirms he has Collin's left arm, so takes the left out of play. Also, IF Paul said, "I know he had a gun on him[,"] which he doesn't believe he said . . . he would have been referring to the night before, just as I was in my statement. Paul's own statement confirms that he hadn't seen a gun that morning.

Woodall Statement:
Woodall states that Simon said he was "sure" he had a gun, yet Simon says he never saw the gun until it was over, and that he felt it and "thought" it was a gun. Again, if you look at the picture on page 363, how could Collin have possibly pulled a gun in that position with Simon holding his right hand or wrist, and Hastings holding his right arm? Also, Woodall says he saw the gun, but can't even tell you what hand it was in? Lastly, he admits that he thought Collin had shot at some point.

Hastings Statement:
Hastings confirms that he too had Collin's right arm. So we are to believe that Simon has his right hand/wrist and Hastings has his right arm, yet Collin managed to reach into his right pocket while laying on his right arm with 4 men on him . . . pull a gun . . . pull the slide back . . . and raise the barrel? Hastings also says he doesn't know which hand the gun was in and that he shot because he thought Collin had shot.

Ford's Statement:
Ford admits he never saw a gun, and only fired because he thought Collin had fired.

How is it that myself and my two children, civilians who have never been around guns, could have known that Collin had NOT fired a weapon, yet these three trained law enforcement officers ALL thought he had?

How is it that two of the three shooters say they don't even know which hand Collin's gun was in, and the third doesn't even try to hide the fact that he never even saw a gun?

. . .

*I hope these notes help you in your attempts to get an attorney for your civil action, so we can all try to get some sort of justice for Collin.* I am planning to contact the Attorney General's office to continue to pursue criminal charges against the detectives, and hopefully the Harris', although I'm not holding my breath at this point.

Mot. to Dismiss or, in the Alternative, Mot. for Summ. J., Ex. 5, at 1–3, *Spradling v. Hastings*, No. 4:15-cv-00238 (E.D. Ark. June 26, 2015), ECF No. 5-5 (emphasis added) (ellipses in original).

Before the district court, Spradling argued against summary judgment, contending that the running of the statute of limitations tolled because the disclosed police file failed to contain certain audio and video recordings. The absence of these recordings cast doubt on the defendants' version of events leading to Collins's death. The district court acknowledged the absence of the recordings, but it concluded that "the case file did contain references to both the dash cam video and to taped statements of witnesses. Further, the file contained transcripts of the taped statements." *Spradling v. Hastings*, No. 4:15-cv-00238, 2017 WL 6816541, at *2 (E.D. Ark. Oct. 23, 2017). The court emphasized that "in Ms. Hatfield's letter to the

Plaintiff she told him that she believed Collin had been murdered and outlined inconsistencies she believed existed in the case file." *Id.*

The court then held, based on the undisputed facts, that "by early 2009 when Plaintiff obtained the case file and the letter of Ms. Hatfield, Plaintiff was placed on objective notice of the need to investigate the shooting." *Id.* at *3. In support of its holding, the court cited (1) the case file's reference to both the audio and video tapes; (2) Hatfield's reference to inconsistences she believed existed in the case file and her belief that Collin was murdered; and (3) Spradling's admission in his affidavit that "after the shooting, Christina Hatfield told me her opinions that the shooting which she witnessed, was not justified. She told me that Collin did not do anything that would have justified the LRPD officers shooting him." *Id.* With these considerations, the district court concluded Spradling's cause of action was not concealed. The court, therefore, determined that the statute of limitations on Spradling's cause of action commenced at the latest in early 2009 and expired in early 2012. Because Spradling did not file suit until November 2012, the court held that the suit was beyond the limitations period.

## II. *Discussion*

On appeal, Spradling argues that the district court erred in granting summary judgment to the defendants. Spradling admits he filed his initial complaint outside of the applicable statute of limitations, but he argues that he presented sufficient evidence of fraudulent concealment and conspiracy to equitably toll the limitations period.

"We review the grant of summary judgment based upon the statute of limitations de novo and take all facts in the light most favorable to [Spradling]." *Mahanna v. U.S. Bank Nat'l Ass'n*, 747 F.3d 998, 1001 (8th Cir. 2014).

"Arkansas's three-year personal injury statute of limitations applies to this § 1983 action filed in Arkansas . . . ." *Miller v. Norris*, 247 F.3d 736, 739 (8th Cir.

2001) (first citing Ark. Code. Ann. § 16-56-105(3); and then citing *Ketchum v. City of W. Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992)). "The statute begins to run when the acts occur." *O'Mara v. Dykema*, 942 S.W.2d 854, 858 (Ark. 1997). Collin was killed on July 16, 2008. If not tolled, the three-year statute of limitations expired on July 16, 2011. Spradling's initial suit was filed on November 5, 2012—nearly 16 months beyond the limitations period.

Spradling does not contest that he filed his § 1983 lawsuit outside of the applicable limitations period; instead, he relies on the principle that "affirmative actions of concealment of a cause of action will toll the statute of limitations." *Id.* As we have previously recognized, Arkansas law provides:

> In order to toll the statute of limitations, there must be a fact question of some positive act of fraud, something so furtively planned and secretly executed as to keep the plaintiff's cause of action concealed, or perpetrated in a way that it conceals itself. Where affirmative acts of concealment by the person charged with fraud prevent the discovery of that person's misrepresentations, the statute of limitations will be tolled until the fraud is discovered or should have been discovered with the exercise of reasonable diligence.

> Arkansas courts hold that although the question of fraudulent concealment is normally a question of fact that is not suited for summary judgment, when the evidence leaves no room for a reasonable difference of opinion, a trial court may resolve fact issues as a matter of law. *Concealment of facts, no matter how fraudulent or otherwise wrongful, has no effect on the running of a statute of limitations if the plaintiffs could have discovered the fraud or sufficient other facts on which to bring their lawsuit, through a reasonable effort on their part.*

> . . .

> The statute-of-limitations inquiry is not subjective—we do not inquire as to when the plaintiffs should have discovered or did discover the alleged fraudulent conduct. Instead, the question is whether the plaintiffs

-8-

used due diligence to discover the alleged fraud. The burden is on the plaintiff to exercise due diligence to discover the fraud if apprised of facts that should place the plaintiff on notice. The [plaintiff's] ignorance of [his] rights does not prevent the operation of the statute of limitations. The statute is tolled only when the ignorance is produced by affirmative and fraudulent acts of concealment. The alleged acts of concealment or fraud must have been committed by those invoking the benefit of the statute of limitations.

*Varner v. Peterson Farms*, 371 F.3d 1011, 1016–18 (8th Cir. 2004) (emphasis added) (cleaned up).

To summarize, under Arkansas law, "the limitations period could only be tolled until such time that [the plaintiff] learned of the wrong or was placed on objective notice of the need to investigate the matter." *Graham v. Catamaran Health Sols. LLC*, No. 16-1161, 2017 WL 3613328, at *5 (8th Cir. Aug. 23, 2017) (citing *Varner*, 317 F.3d at 1017). "[Spradling], as the plaintiff, bears the burden of establishing the applicability of this tolling theory." *Id.* (citing *Chalmers v. Toyota Motor Sales, USA, Inc.*, 935 S.W.2d 258, 261 (Ark. 1996)).

Viewing the facts in the light most favorable to Spradling, the record shows that on July 25, 2008, Spradling was appointed administrator of Collin's estate "for the limited purpose of performing any and all acts necessary to investigate, and, if warranted, prosecute a wrongful death claim relative to the circumstances surrounding the death of William Collin Spradling, which occurred on or about July 16, 2008." Mot. to Dismiss or, in the Alternative, Mot. for Summ. J., Ex. 1, at 1, *Spradling v. Hastings*, No. 4:15-cv-00238 (E.D. Ark. June 26, 2015), ECF No. 5-1. Then, on November 4, 2008, Hatfield—who witnessed the shooting—sent a request to the LRPD to obtain a copy of the case file related to the shooting. Hatfield received the case file in November 2008. A few weeks to a month after receiving the case file from the LRPD, Hatfield sent the case file to Spradling, along with a letter containing her observations about the file's contents.

Crucially, Hatfield personally witnessed Collin's shooting. Reviewing the record in the light most favorable to Spradling, we conclude that Hatfield's detailed letter to Spradling— explaining the "many inconsistencies" that she found in the case file and expressing her belief that Collin had been murdered—gave Spradling "objective notice of the need to investigate the matter." *Graham*, 2017 WL 3613328, at *5. For his part, Spradling argues that he doubted Hatfield's letter after reading "the official LRPD-transcribed statement of Ms. Hatfield" in which she indicated that "Collin had a gun on his person when he shot" despite Hatfield telling Spradling in her letter that Collin did not have a gun. Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J., Ex. 33, at 8, *Spradling v. Hastings*, No. 4:15-cv-00238 (E.D. Ark. July 14, 2015), ECF No. 62-25. But Hatfield's letter to Spradling explained some of the confusion about her statement that Collin had a gun—she indicated that if she had said it, she was referring to the night prior. For purposes of our inquiry, the key question is whether Hatfield's letter gave Spradling objective notice that further investigation was necessary. Hatfield's first-hand knowledge of events and the inconsistencies detailed in her description of the events versus the police record placed Spradling on objective notice that he needed to investigate further.

Additionally, as the district court noted, the case file—which Spradling possessed—specifically *referenced* the audio and video recordings not included in the file materials provided to Spradling by the defendants. Thus, their *existence* was not concealed from Spradling. *See Varner*, 371 F.3d at 1016 ("In order to toll the statute of limitations, there must be a fact question of 'some positive act of fraud, something so furtively planned and secretly executed as to keep the plaintiff's cause of action concealed, or perpetrated in a way that it conceals itself.'" (quoting *Martin v. Arthur*, 3 S.W.3d 684, 687 (Ark. 1999))). As the district court noted, Spradling "could have obtained the audio and video files by simply requesting them." *Spradling*, 2017 WL 6816541, at *3.

Without question, this case involves a tragic loss of life. Legitimate, serious questions surrounding the cause of that tragic loss appeared soon after it occurred. Based on the undisputed facts, these questions were present well within the three-year statute of limitations for the claims alleged. Arkansas law prescribes that an action must be dismissed when it is filed outside of the applicable limitations period. Spradling was on objective notice of the need to further investigate the circumstances surrounding Collin's death. He thus does not satisfy the requirements of equitable tolling.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____