# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-2083

_____

Paula Christy L. Schmidt; Holly Woprice

*Plaintiffs - Appellants*

v.

Richard Newland, Trustee of the Michael Allen Lasiter Trust, Amended and
Restated February 19, 2016; John Doe, as Personal Representative of the Estate of
Michael Allen Lasiter, Deceased

*Defendant*s

Newland & Associates PLLC, Trustee of the Michael Allen Lasiter Revocable
Trust, Amended and Restated February 19, 2016; Relyance Bank N.A., as
Personal Representative of the Estate of Michael Allen Lasiter, Deceased

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: April 16, 2019
Filed: June 26, 2019

_____

Before SHEPHERD, MELLOY, and GRASZ, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Christy Schmidt and Holly Woprice filed an action in United States District Court for fraud and breach of fiduciary duty against Newland & Associates, PLLC, trustee of the Michael Allen Lasiter Revocable Trust, and Relyance Bank, N.A., personal representative of Michael Lasiter's estate. The district court,[1] sitting in diversity pursuant to 28 U.S.C. § 1332, dismissed Christy and Holly's claims as barred by the applicable Arkansas statute of limitations. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

I.

Mannie Lasiter founded and was the chief operating officer of Lasiter Construction, Inc. (formerly Lasiter Asphalt Maintenance Company) from the Company's incorporation in 1985 until 2000. While Mannie originally held all of the 1,000 outstanding shares of stock in the Company, he transferred 176 of his shares to his son Michael between 1985 and 1992. Mannie's 1999 Federal Gift Tax Return, signed by the preparer on October 16, 2002, shows that Mannie gave Michael 314 more shares of the Company in 1999.

On September 15, 2000, Mannie and Michael entered into a succession agreement that determined the fate of the Company once Mannie retired as COO. The agreement laid out terms for Mannie's continued employment with the Company; provided for transfer of all Mannie's stock to Michael through gifts, sale, and inheritance; and ensured Mannie would be released from liability on certain loans. On October 19, 2000, pursuant to the succession agreement, Mannie and Michael signed a stock purchase agreement by which Mannie agreed to sell Michael "controlling interest" in the Company for $50,000. Michael also agreed to purchase

_____

[1]The Honorable Billy Roy Wilson, United States District Judge for the Eastern District of Arkansas.

-2-

the remainder of Mannie's Company stock when Mannie retired. That same day, Mannie purportedly transferred 410 shares of Company stock to Michael.

Mannie and Michael also signed an employment agreement, which guaranteed Mannie employment with the Company until July 31, 2005 at a salary of $110,000 annually. The employment agreement additionally guaranteed Mannie five further years of employment at $65,000 annually. Mannie continued to work for the Company until a few months before his death in 2004. His income tax returns for the relevant period consistently show annual compensation from the Company that falls short of the promised $110,000.

On September 17, 2002, Mannie created the Mannie Lasiter Trust, for which he served as trustee until his death. The Trust provided that, after Mannie's death, all his stock in the Company would go to Michael. The remainder of Mannie's estate would be split between Michael, Mannie's grandchildren, and Mannie's daughters, Christy and Holly. Mannie also executed a will, which left his entire estate to the Trust and named Michael as trustee.

Mannie died on June 28, 2004. On July 2, Mannie's attorney, Richard Newland, met with Holly, Christy, and Michael for a reading of the will. Holly and Christy were provided with an abridged version of the Trust and a list of Trust property. Mannie's will was never admitted to probate.

On July 15, 2004, Holly emailed Newland requesting a copy of Mannie's will and a complete copy of the Trust. Newland provided Christy and Holly with the requested copies and told them that all legal fees for the estate would be paid from the Trust. Newland also informed Christy and Holly that he was Mannie's attorney and that it was his job to carry out Mannie's wishes, but he assured them that he could answer questions for them as long as those questions would not harm any other beneficiary of the Trust. Christy and Holly responded by asking specific questions

about the Trust, the employment agreement, and the will, and by expressing concern that Michael had a conflict of interest by acting as trustee when he was a beneficiary of the Trust. Despite their concerns, Christy and Holly never hired independent counsel or took any legal action.

In February 2016, Michael transferred 824 shares of his Company stock to his own trust, the Michael Allen Lasiter Trust (the MALT). Michael died on May 31, 2016, and the MALT contracted to convey away 750 shares of Company stock the next month.

Holly and Christy allege they discovered the employment agreement, succession agreement, and stock purchase agreement at some unspecified point after Michael's death. In October 2017, they filed suit against Michael's estate and the MALT. They later amended their Complaint, identifying the defendants as Newland & Associates, trustee of the MALT, and Relyance Bank, personal representative of Michael's estate. Holly and Christy alleged Michael had breached his fiduciary duty as trustee of Mannie's trust by misrepresenting trust assets and intentionally failing to disclose those assets to them. They further claimed that Michael received 724 shares of Company stock from Mannie through fraudulent transfers,[2] that these shares actually belonged to Mannie's estate, and that Mannie died intestate. Because Mannie owned 100 shares of Company stock at his death, Holly and Christy claimed 824 shares of Company stock should have been distributed to them and Michael according to intestacy instead of unilaterally transferred to Michael.

Based on these claims, Holly and Christy requested that the district court rescind the allegedly-fraudulent transfers of the 724 shares of stock. They each sought the sales proceeds from 274.67 shares of stock apiece, or one-third of the 824

---

[2]Holly and Christy allege that the 1999 transfer of 314 shares and the 2000 transfer of 410 shares were fraudulent.

shares they alleged Mannie owned at his death. In addition, they sought payment of all dividends paid on those shares from 2004 until 2016, prejudgment interest, rescission of the succession agreement, monetary damages for Michael's breach of fiduciary duty, attorney's fees, and costs.

Newland & Associates moved to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Relyance Bank joined the motion. The parties agreed that Arkansas's three-year statute of limitations facially barred Christy and Holly's claims. See Ark. Code Ann. § 16-56-105 (implementing a three-year statute of limitations); Alexander v. Flake, 322 Ark. 239, 241, 910 S.W.2d 190, 191 (1995) (applying § 16-56-105 to fraud and breach of fiduciary duty claims). Christy and Holly argued, however, that Michael's fraudulent concealment of his actions tolled the statute of limitations. The district court found that Christy and Holly could have brought their claims in 2004 based on information they possessed at that time. Instead, the sisters waited over a decade to file suit. Accordingly, the district court held that the limitations period was not tolled, and it granted the motion to dismiss. Holly and Christy appeal.

II.

We review a district court's decision to grant a motion to dismiss de novo. Varner v. Peterson Farms, 371 F.3d 1011, 1016 (8th Cir. 2004). If a defendant raises a statute of limitations defense and the face of the complaint indicates that the limitations period has expired, the plaintiff can only survive a 12(b)(6) motion to dismiss by showing, by a preponderance, that the statute of limitations was tolled. See id.; see also Cherepski v. Walker, 323 Ark. 43, 50, 913 S.W.2d 761, 765 (1996). Under Arkansas law, to toll a limitations period because of fraudulent concealment, a plaintiff must show "(1) a positive act of fraud (2) that is actively concealed, and (3) is not discoverable by reasonable diligence." Bomar v. Moser, 369 Ark. 123, 132, 251 S.W.3d 234, 242 (2007).

-5-

In Varner v. Peterson Farms, this Court applied Arkansas law and concluded plaintiffs could not toll the statute of limitations when they suspected fraud before the limitations period expired but failed to exercise reasonable diligence to discover the alleged fraud. 371 F.3d at 1017-18. The Varner panel stated,

> [W]e do not inquire as to when the plaintiffs should have discovered or did discover the alleged fraudulent conduct. Instead, the question is whether the plaintiffs used due diligence to discover the alleged fraud. The burden is on the plaintiff to exercise due diligence to discover the fraud if apprised of facts that should place the plaintiff on notice. The beneficiaries' ignorance of their rights does not prevent the operation of the statute of limitations.

Id. (citations omitted); see also Alexander v. Flake, 322 Ark. 239, 242, 910 S.W.2d 190, 191 (1995).

On appeal, Holly and Christy essentially rest on the factual allegations contained in their Amended Complaint and assert that these facts show the existence of fraudulent concealment by Michael which would toll the running of the limitations period. See Bomar, 369 Ark. at 132-33, 251 S.W.3d at 242-43 (holding that the plaintiff showed possible fraudulent concealment and could toll the limitations period when the defendants, his attorneys, told him that two corporations were their clients when the corporations were actually the attorneys' alter egos, and the only way the plaintiff could have discovered the truth was by examining financial records he could not access). Appellees respond that Holly and Christy expressed concerns about Michael's conduct in 2004 but failed to exercise reasonable diligence in investigating those concerns. We agree with Appellees and the district court that Holly and Christy possessed enough information in 2004 to put them on notice of Michael's allegedly fraudulent conduct.

Holly and Christy now assert that they were entitled to rely on Michael's representations as the trustee and did not have to investigate further. However, the exhibits attached to the Amended Complaint show that, in 2004, Holly and Christy expressed concerns about Michael's activities with respect to the Company, its stock, Mannie's Trust, and Michael's dealings with Mannie. They asked Newland questions about the employment agreement, the value of the stock Mannie gave Michael, and the math behind the division of Mannie's assets. Holly and Christy further expressed to Newland that they felt Michael had a conflict of interest as both trustee and a beneficiary of the Trust. They indicated, however, that they did not want Michael to know about their questions "in order to avoid creating a fuss about something [they might] decide not to address once [they knew] the answer." Am. Compl. 102, Dist. Ct. Dkt. 2.

Further, within a month of Mannie's death in 2004, Holly and Christy received a list of Trust assets and copies of both Mannie's will and the Trust. Both the Trust and Mannie's will mentioned the employment agreement—which Holly and Christy did not request—and indicated that Michael was to receive all of Mannie's stock. Thus, in 2004, at the latest, Holly and Christy knew about the employment agreement, knew that Michael received all of Mannie's stock, and expressed concerns about Michael's behavior as trustee of the Trust and his potential conflict of interest.

Despite being expressly told in July 2004 that Newland was Mannie's attorney, not theirs, Holly and Christy did not engage independent counsel and did not take any legal action until 2017—thirteen years after they were put on notice of possible misconduct and a decade after the statute of limitations expired. Based on these facts, clearly delineated in the record, we find that Christy and Holly, had they exercised due diligence, could have discovered Michael's alleged fraudulent misconduct in 2004. We agree with the district court that Holly and Christy's tolling argument is without merit and their claims are barred by the limitations.

The judgment of the district court is affirmed.

———————————————