**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| SAMSUNG ELECTRONICS CO., LTD., a Korean corporation,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>PANASONIC CORPORATION, a Japanese corporation; PANASONIC CORPORATION OF NORTH AMERICA, a Delaware corporation; SD-3C LLC, a Delaware limited liability company,<br>*Defendants-Appellees*. | No. 12-15185<br><br>D.C. No.<br>3:10-cv-03098-<br>JSW<br><br>OPINION |

Appeal from the United States District Court
for the Northern District of California
Jeffrey S. White, District Judge, Presiding

Argued and Submitted
December 5, 2013—San Francisco, California

Filed April 4, 2014

Before: Ronald M. Gould and Richard A. Paez, Circuit
Judges, and David A. Ezra, District Judge.[*]

Opinion by Judge Gould

---

[*] The Honorable David A. Ezra, District Judge for the U.S. District
Court for the Western District of Texas, sitting by designation.

## SUMMARY[**]

### Antitrust

The panel reversed the district court's dismissal, as barred by the four-year statute of limitations, of a private action to enforce the antitrust laws.

The plaintiff alleged that the defendants' licenses for SD cards were an anti-competitive agreement in restraint of trade and a monopolization of the relevant markets. The panel held that to state a continuing violation of the antitrust laws, and thus plead an exception to the statute of limitations, a plaintiff must allege that a defendant completed an overt act during the limitations period that meets two criteria: 1) It must be a new and independent act that is not merely a reaffirmation of a previous act; and 2) it must inflict new and accumulating injury on the plaintiff. The panel held that the plaintiff sufficiently alleged that the defendants committed two overt acts within the limitations period when they adopted a new license and attempted to enforce either the original or the new license by collecting royalty payments from the plaintiff.

The panel held that the case also fell within the statute-of-limitations exception for speculative damages because the existence of the harm was not determinable at the time of the adoption of the original license.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel reversed the district court's order of dismissal and remanded for further proceedings on the federal antitrust law claims and on supplemental state law claims.

**COUNSEL**

Robert A. Long, Jr. and Timothy C. Hester, Covington & Burling LLP, Washington, D.C.; Kathleen M. Sullivan (argued) and Kevin P.B. Johnson, Quinn Emanuel Urquhart & Sullivan, LLP, New York, New York, for Plaintiff-Appellant.

Jeffrey L. Kessler (argued), Aldo A. Badini, James F. Lerner, and Susannah P. Torpey, Winston & Strawn LLP, New York, New York; Ian L Papendick, Winston & Strawn LLP, San Francisco, California, for Defendants-Appellees Panasonic Corporation and Panasonic Corporation of North America.

Christopher B. Hockett, Neal A. Potischman, and Samantha H. Knox, Davis Polk & Wardwell LLP, Menlo Park, California, for Defendant-Appellee SD-3C, LLC.

**OPINION**

GOULD, Circuit Judge:

We must determine the scope of the continuing violation exception to the four-year statute of limitations on private actions to enforce the antitrust laws. 15 U.S.C. § 15b. Plaintiff-Appellant Samsung Electronics Company ("Samsung") appeals the district court's dismissal under Federal Rule of Civil Procedure 12(b)(6) of its claim against

Defendants-Appellees Panasonic Corporation, Panasonic Corporation of North America, and SD-3C, LLC ("SD Defendants"). We review *de novo* a district court's dismissal for failure to state a claim. *Von Saher v. Norton Simon Museum of Art*, 592 F.3d 954, 960 (9th Cir. 2010). We have jurisdiction under 28 U.S.C. § 1291, and we reverse.

# I

SD cards are the dominant form of flash memory card on the market, and are widely used in cellular phones, digital cameras, audio players, and other forms of mobile electronics.[1] In 1999, Panasonic and its allies developed SD cards as a modified proprietary format of the flash memory cards then available, created the SD Group to promote their use, and created SD-3C to license the format to manufacturers. In 2003, the SD Defendants created a standard license (the "2003 license") that contained a clause imposing a 6 percent royalty on SD cards sold by manufacturers who were not members of the SD Group. Samsung signed this license agreement, although it did not at once begin producing SD cards because it was then manufacturing a competing version of flash memory cards.

In 2005 and 2006, the SD Defendants developed two new forms of SD cards: the high capacity SD card ("SDHC") was the same physical size as the first-generation product, but used distinct software to give it a substantially higher storage capacity than the original; the microSD card, designed for use in mobile phones, was much smaller than the first-generation

---

[1] Because this case is an appeal of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the facts are taken from the complaint and viewed in the light most favorable to Samsung.

product. By its terms, the 2003 license did not cover these new formats. The SD Group met in the fall of 2006 and adopted an "Amended and Restated SD Memory Card License Agreement" (the "2006 license"), which contained the same 6 percent royalty terms for non-SD Group manufacturers of the two new formats as the 2003 license had required for the original cards.

Samsung started to make both of these new formats in late 2006 as microSD and SDHC cards became the dominant form of flash memory on the market. The SD Defendants requested that Samsung sign the 2006 license, and told Samsung that the executed 2003 license agreement did not include the right to manufacture the new formats. Samsung refused to sign the 2006 license. But as it began manufacturing the new formats, Samsung made the requested royalty payments on a quarterly basis beginning in November 2006.

Samsung filed suit in June 2010, alleging that the SD Defendant's licenses were an anti-competitive agreement in restraint of trade in violation of Sherman Act section 1, a monopolization of the relevant markets in violation of Sherman Act section 2, and also violated parallel state laws.[2] The district court granted the SD Defendants' motion to dismiss the suit on the grounds that Samsung's claims were time-barred. The district court held that all events that took place within the four years before Samsung's suit were a mere continuation of the prior actions, and that they did not

---

[2] The SD Defendants argue that their behavior was a pro-competitive patent pool. The district court did not reach the merits of Samsung's claims. We also express no position on the substance of the complaint.

restart the statute of limitations to allow the filing of the claims.  Samsung filed a timely notice of appeal.

## II

The governing statute, 15 U.S.C. § 15b, sets a four year statute of limitations on private antitrust actions.  But an exception to this time limit exists for continuing violations. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971) ("In the context of a continuing conspiracy to violate the antitrust laws, . . . each time a plaintiff is injured by an act of the defendants a cause of action accrues to him to recover the damages caused by that act and that, as to those damages, the statute of limitations runs from the commission of the act.")

To state a continuing violation of the antitrust laws in the Ninth Circuit, a plaintiff must allege that a defendant completed an overt act during the limitations period that meets two criteria: "1) It must be a new and independent act that is not merely a reaffirmation of a previous act; and 2) it must inflict new and accumulating injury on the plaintiff." *Pace Industries, Inc. v. Three Phoenix Co.*, 813 F.2d 234, 238 (9th Cir. 1987).[3]  This standard is meant to differentiate those cases where a continuing violation is ongoing—and an antitrust suit can therefore be maintained—from those where all of the harm occurred at the time of the initial violation.

---

[3] Other circuits have adopted similar standards.  *See, e.g.*, *Varner v. Peterson Farms*, 371 F.3d 1011, 1019 (8th Cir. 2004) (adopting the *Pace* standard); *Al George, Inc. v. Envirotech Corp.*, 939 F.2d 1271, 1275 (5th Cir. 1991) (same); *Peck v. Gen. Motors Corp.*, 894 F.2d 844, 849 (6th Cir. 1990) ("Since the Supreme Court decided Zenith, federal courts have uniformly" recognized the continuing violation exception (citing *Pace*, 813 F.2d at 237)).

The prime example in our circuit of the latter type of case is *AMF, Inc. v. General Motors Corp. (In re Multidistrict Vehicle Air Pollution)*, 591 F.2d 68 (9th Cir. 1979). There we held that a suit by an automobile parts manufacturer challenging the decision of a group of automakers not to include parts from the manufacturer in future models of their vehicles was not timely, because the unique nature of the automobile business meant that the initial refusal to deal was an "irrevocable, immutable, permanent and final" decision and any damages that occurred during the limitations period "necessarily resulted from" and "were but unabated inertial consequences of some pre-limitations action." 591 F.2d at 72 (internal quotation marks omitted).

*AMF* is the exception, not the rule. More common are cases such as *Pace*, where we held that a lawsuit constituted an overt act even though the suit was filed to enforce a non-compete agreement in the contract for a sale of a business, and that the contract had been made outside the limitations period. 813 F.2d at 239. The antitrust action was ultimately dismissed as untimely because the lawsuit challenging the non-compete agreement was also filed outside the limitations period, and the continued prosecution of the case "relate[d] back" to the filing of the case. *Id.* Even though the suit was dismissed, we held that certain actions taken to enforce contracts made in violation of the antitrust laws were sufficient to restart the statute of limitations. *Id.* at 237.

Along the same lines, non-legal actions taken pursuant to a pre-limitations period contract can lead a new cause of action to accrue. For example, in *Hennegan v. Pacifico Creative Service, Inc.*, 787 F.2d 1299 (9th Cir. 1986), we faced an arrangement in which a tourism company agreed to steer customers to preferred souvenir shops. We held that a

cause of action accrued each and every time that a tourist was shepherded away from the plaintiff's non-preferred shop because even though the agreement predated the limitations period, the agreement itself did not "immediately and permanently destroy" plaintiff's business nor did it cause "irrevocable, immutable, permanent, and final" injury. 787 F.2d at 1301.  Similarly, in *Columbia Steel Casting Co., Inc. v. Portland General Electric Co.*, 111 F.3d 1427 (9th Cir. 1996), we held that a power producer's refusal to wheel electricity in accordance with a pre-limitations contract constituted an overt act that restarted the statute of limitations.  *Id*. at 1444–45.  Even though the anti-competitive agreement to divide the market between producers dated back to 1972, the anti-competitive acts of the parties to that agreement, taken pursuant to its terms, were sufficient to support an antitrust action 18 years later.  *Id.*  In both of these cases, an action taken under a pre-limitations contract was sufficient to restart the statute of limitations so long as the defendant had the ability not to take the challenged action, even if that would have required breaching the allegedly anti-competitive contract.

## III

Samsung here alleges that the SD Defendants committed two overt acts within the limitations period:  the adoption of the 2006 license, which extended the license to cover the second-generation SD cards, and the attempt to enforce either license by collecting royalty payments from Samsung.  We agree that both acts caused Samsung's cause of action to accrue within the limitations period.

## A

The adoption of the 2006 license was a "new and independent act" that caused "new and accumulating injury" within the meaning of *Pace* because the 2003 license neither covered second-generation SD cards, nor did it cover expansion to future technological developments. Rather, the 2003 license applied only to the production of first-generation SD cards, a fact that the SD Defendants recognized when they sought to have Samsung sign the new licensing agreement. The 2003 license did not contemplate future expansion, nor did it foreclose future agreements on different terms. *Cf. AMF*, 591 F.2d at 72 (noting the unique characteristics of the automobile manufacturing market, which require the integration of multiple parts, substantial planning, and lead time).

That the 2006 license imposed the same 6 percent royalty rate on the new SD cards as the 2003 license did on the old ones is not evidence that the new license was a reiteration or extension of the prior agreement. As our sister circuits have said, "[t]he typical antitrust continuing violation occurs . . . when conspirators continue to meet to fine-tune their cartel agreement." *Midwestern Mach. Co. v. Nw. Airlines, Inc.*, 392 F.3d 265, 269 (8th Cir. 2004) (citing *Pa. Dental Ass'n v. Med. Serv. Ass'n of Pa.*, 815 F.2d 270, 278 (3rd Cir. 1987). That is what is alleged here, and Samsung's suit is timely.

## B

We further hold that, even if the 2006 license was merely a restatement of the 2003 license, the application of the licenses to Samsung when it began to make SD cards in the fall of 2006 was also an overt act that restarted the limitations

period. We have repeatedly held that acts taken to enforce a contract were overt acts that restarted the statute of limitations. *Columbia Steel*, 111 F.3d at 1444–45; *Pace*, 813 F.2d at 237; *Hennegan*, 787 F.2d at 1300–01. When the SD Defendants approached Samsung and required it to make license payments—whether under a new 2006 license or under the 2003 license—those acts caused independent harm and accumulating injury. Like the agreement among the tour operators in *Hennegan* and among the power companies in *Columbia Steel*, the license itself did not permanently and finally control the acts of the SD Defendants. Their decision to enforce the contract caused a new anti-competitive harm, and the statute of limitations ran anew from the time that defendants began enforcement.

## C

Our decision rests not only on the continuing violation exception, but also on the exception for speculative damages. As the Supreme Court has held, private antitrust actions are intended to let parties recover "future damages that could not be proved within four years of the conduct from which they flowed" so that they are not "forever incapable of recovery, contrary to the congressional purpose." *Zenith*, 401 U.S. at 340. Thus, if harm is "uncertain" or "speculative" at the time of the antitrust violation, the statute of limitations period begins on the date that the plaintiff's damages first "accrued and became ascertainable." *AMF*, 591 F.2d at 71, 73 (citing *Zenith*, 401 U.S. at 339; quoting *Hanson v. Shell Oil Co.*, 541 F.2d 1352, 1361 (9th Cir. 1976)). As we have explained, the key question in determining whether damages were overly speculative such that recovery would be unavailable at the time of the initial act is whether the existence of the harm is determinable, not the specific dollar value of that harm.

*Pace*, 813 F.2d at 240 ("Thus, uncertain damages, which prevent recovery, are distinguishable from uncertain extent of damage, which does not prevent recovery.").

At the time of the adoption of the 2003 license, Samsung was not in the SD card market, and neither Samsung nor the SD Defendants could have known for certain whether Samsung would enter that market. SD cards proved more popular than Samsung's alternative flash memory format, particularly for use in the rapidly growing markets for mobile phones and portable media players. The law does not require a potential plaintiff to foresee the kind of dramatic and rapid technological changes that took place over the last decade to recover damages for antitrust harms. Because the harm to Samsung challenged in this suit was speculative at the time of the initial wrong, the law of limitations in federal antitrust actions allowed Samsung to file suit once the harm crystallized in 2006. *Zenith*, 401 U.S. at 340; *Pace*, 813 F.2d at 240.

## IV

The district court dismissed Samsung's claims under the California Unfair Competition Law ("UCL") and California state antitrust law, known as the Cartwright Act, as well as a claim for equitable relief. The district court concluded that dismissal of these claims was controlled by the untimeliness of the federal antitrust claims. But because we have concluded that the federal antitrust claims were timely, we

vacate the district court's dismissal of the state law claims and remand.[4]

Finally, the district court did not address Samsung's equitable claim in its order dismissing the case as untimely. We have held that the deadline for suits for equitable relief under the antitrust laws is governed by laches, and that the four-year statute of limitations in 15 U.S.C. § 15b "furnishes a guideline for computation of the laches period." *Int. Tel. & Tel. Corp. v. Gen. Tel. & Elec. Corp.*, 518 F.2d 913, 926 (9th Cir. 1975), *disapproved of on other grounds*, *California v. Am. Stores Co.*, 495 U.S. 271 (1990). Construing the district court's order as an implicit dismissal of the equitable claim, we vacate that dismissal and remand for a determination of whether the equitable claim was timely as well.

---

[4] California's UCL incorporates violations of substantive statutes and makes them punishable as unfair business practices. Cal. Bus. & Prof. Code § 17200. While the district court permissibly dismissed the UCL claim once it had decided that Samsung no longer had any other substantive legal claims on which to rest its UCL arguments, that underlying decision is no longer accurate and the UCL claim must be reinstated.

The Cartwright Act claim was dismissed based on a holding that the interpretation of California's antitrust statute was coextensive with the Sherman Act. This is no longer the law in California. *Aryeh v. Canon Business Solutions, Inc.*, 55 Cal. 4th 1185, 1195 (2013) ("Interpretations of federal antitrust law are at most instructive, not conclusive, when construing the Cartwright Act, given that the Cartwright Act was modeled not on federal antitrust statutes but instead on statutes enacted by California's sister states around the turn of the 20th century." (citing *State of California ex rel. Van de Kamp v. Texaco, Inc.*, 46 Cal. 3d 1147 (1988))). This claim is remanded to the district court for a determination in the first instance of whether California law permits a Cartwright Act claim under the circumstances alleged in Samsung's complaint.

## V

The district court's order dismissing the case is reversed and the case is remanded for further proceedings on the federal antitrust law claims and on the supplemental state law claims, consistent with this opinion.

**REVERSED AND REMANDED.**