NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

AUG 4 2022

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

HAWTHORNE HANGAR OPERATIONS, L.P., a California limited partnership; DAN WOLFE, an individual,

No. 21-55542

D.C. No.
2:20-cv-10744-PA-AS

Plaintiffs-Appellants,

v.

MEMORANDUM[*]

HAWTHORNE AIRPORT, LLC, a Delaware limited liability company; et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Central District of California
Percy Anderson, District Judge, Presiding

Argued and Submitted April 11, 2022
Pasadena, California

Before: CALLAHAN and VANDYKE, Circuit Judges, and EZRA,[**] District Judge. Dissent by Judge VANDYKE.

Plaintiffs-Appellants Dan Wolfe and Hawthorne Hangar Operations, L.P.

appeal the district court's grant of two dispositive motions based on the statute of

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]      The Honorable David A. Ezra, United States District Judge for the District of Hawaii, sitting by designation.

limitations: (1) a motion to dismiss filed by Defendants-Appellees David Wehrly, Levi Stockton, Hawthorne Airport, LLC, and Advanced Air, LLC (collectively, the "Airport Partnership") that the district court converted into a motion for summary judgment and (2) a motion to dismiss filed by the City of Hawthorne (the "City"). We affirm.

This appeal is part of a long-running dispute among former business partners. In 2005 and 2007, the Airport Partnership entered into lease agreements with the City that gave the Airport Partnership control of nearly all of Hawthorne Municipal Airport. Among other things, the Airport Partnership sold fuel to planes that stopped at the airport. In 2009, Wolfe and Wehrly formed Hawthorne Hangar Operations and purchased a parcel of land adjacent to the airport. The purchase agreement contained a restrictive covenant that barred them from using the property to sell fuel to these visiting planes. Wolfe also signed an agreement with the City allowing aircraft to travel between the airport and the newly acquired property that expressly acknowledged the restrictive covenant. In 2014, Wolfe bought out Wehrly's share of Hawthorne Hangar Operations; in the sale agreement, Wolfe again acknowledged the restrictive covenant. Nonetheless, in August 2016, Wolfe sought a fuel concession agreement from the City to sell fuel and in 2019, Wolfe unsuccessfully tried to lease a portion of the airport despite having acknowledged that it had already been leased to the Airport Partnership.

2

In 2020—over a decade after first becoming aware of the restrictive covenant regarding fuel sales—Wolfe and Hawthorne Hangar Operations sued the Airport Partnership and the City for violating federal antitrust law by executing the agreements that contained the restrictive covenant and gave the Airport Partnership control of nearly all of the airport. They asserted four claims: two antitrust claims (which brought this case into federal court) and two state law claims.

In response, the Airport Partnership and City filed motions to dismiss for failure to state a claim. The district court focused on whether the antitrust claims were barred by the statute of limitations. An antitrust claim must be filed "within four years after the cause[s] of action accrued," plus any additional time during which the statute of limitations is tolled. 15 U.S.C. § 15b; *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 338 (1971). This lawsuit was filed on November 24, 2020, so the antitrust claims must have accrued no earlier than November 24, 2016. The district court converted the Airport Partnership's motion into a motion for summary judgment, ruled that the antitrust claims accrued in 2009, and dismissed these claims as time-barred. The district court declined to exercise supplemental jurisdiction over the remaining state law claims and entered judgment for the Airport Partnership and the City. It denied Wolfe's and Hawthorne Hangar Operations' subsequent motion seeking relief from the final judgment based on newly discovered evidence.

Wolfe and Hawthorne Hangar Operations now appeal. They argue that when the pleadings and record are properly viewed through the standards applicable to a motion to dismiss for failure to state a claim and a motion for summary judgment, respectively, (1) the statute of limitations did not accrue until 2019 and, alternatively, (2) the statute of limitations reset at some point after November 24, 2016, under the continuing violations doctrine. Wolfe and Hawthorne Hangar Operations also appeal the denial of their motion for relief from final judgment.

We review a district court's grant of a motion to dismiss for failure to state a claim and a motion for summary judgment de novo. *Gibson v. Off. of Atty. Gen., State of Cal.*, 561 F.3d 920, 925 (9th Cir. 2009); *Del. Valley Surgical Supply Inc. v. Johnson & Johnson*, 523 F.3d 1116, 1119 (9th Cir. 2008). We review the district court's denial of a motion for relief from final judgment for abuse of discretion. *Wood v. Ryan*, 759 F.3d 1117, 1119 (9th Cir. 2014).

"Generally, a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business." *Zenith Radio Corp.*, 401 U.S. at 338. It is undisputed that the Airport Partnership and the City committed the allegedly injurious acts in 2005 and 2007, when they executed the agreements giving the Airport Partnership control over nearly all of the airport. *See id.* The dispute is about when these agreements "injured [Wolfe and Hawthorne Hangar Operations'] business." *Id.*

4

We agree with the district court that even when accepting the well-pled allegations in the complaint as true and viewing the evidence in the record in the light most favorable to Wolfe and Hawthorne Hangar Operations, they were first injured in 2009—after (1) Wolfe and Wehrly formed Hawthorne Hangar Operations to buy the airport-adjacent property, (2) Wolfe signed a letter to Wehrly affirming his intent to sell fuel, (3) Wolfe accepted the restrictive covenant in the purchase agreement, and (4) Wolfe signed an agreement with the City that acknowledged that restrictive covenant. This conclusion is buttressed by a 2017 email in which Wolfe admitted that he thought he had legal claims in 2009 and "believed that it would be easy later to prove the wrong[]doing." Further, additional events between 2009 and November 24, 2016—alleged in the complaint and reflected in the record—likely would have started the clock on the statute of limitations such that the antitrust claims would still be untimely even if they had not accrued in 2009. For example, in 2014 (when Wolfe bought out Wehrly) Wolfe and Wehrly contested the restrictive covenant barring Wolfe and Hawthorne Hangar Operations from selling fuel to visiting planes. And in August 2016, Wolfe sought the fuel concession agreement from the City so he could sell fuel.

Wolfe and Hawthorne Hangar Operations argue that the statute of limitations was reset and that their claims are timely under the continuing violations doctrine. This doctrine provides that later wrongful acts by a defendant

5

can sometimes allow a plaintiff to assert a claim regarding earlier conduct that would otherwise be barred by the statute of limitations. To state a continuing violation of the antitrust laws "a plaintiff must allege that a defendant completed an overt act during the limitations period that meets two criteria: '1) It must be a new and independent act that is not merely a reaffirmation of a previous act; and 2) it must inflict new and accumulating injury on the plaintiff.'" *Samsung Elecs. Co. v. Panasonic Corp.*, 747 F.3d 1199, 1202 (9th Cir. 2014) (quoting *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 238 (9th Cir. 1987)). The party seeking relief under the doctrine bears the burden of satisfying these elements. *NLRB v. Don Burgess Const. Corp.*, 596 F.2d 378, 383 n.2 (9th Cir. 1979).

Under the facts of this case, the continuing violations doctrine does not permit Wolfe and Hawthorne Hangar Operations to assert their otherwise-untimely antitrust claims. Wolfe and Hawthorne Hangar Operations principally rely on two events from 2017 to support their continuing violations arguments: (1) the installation of a fence that blocked planes at the airport from entering the adjacent property to purchase fuel and (2) the filing of a state court lawsuit by the Airport Partnership. Wolfe and Hawthorne Hangar Operations argue that each of these events constituted a new and independent act that inflicted new and accumulating injury thereby resetting the statute of limitations. But given that we have concluded that the statute of limitations started running in 2009, neither event occurred during

6

the limitations period (which ended in 2013) and thus neither can be the basis for the application of the continuing violations doctrine and extension of the limitations period.[1] *See Samsung Elecs. Co.*, 747 F.3d at 1202. In addition, Wolfe and Hawthorne Hangar Operations have not explained how either of these events would impact the analysis relating to the City, which did not build the fence and was not a party to the state court action.

In sum, Wolfe and Hawthorne Hangar Operations have not satisfied their burden of showing that they are entitled to relief under this doctrine based on the installation of the fence or any of the other acts they reference. This conclusion is unaltered by Wolfe's and Hawthorne Hangar Operations' motion for relief from final judgment, which they filed to admit newly discovered evidence relating to the fence. *See Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.*, 833 F.2d 208, 211 (9th Cir. 1987). Applying an abuse of discretion standard, we affirm the district court's denial of this motion. We also deny the Airport Partnership's and the City's pending motion to file supplemental briefing.

The district court correctly determined that Wolfe's and Hawthorne Hangar Operations' antitrust claims accrued and the statute of limitations began running

---

[1] Characterizing the filing of a lawsuit as a new antitrust violation sufficient to restart the statute of limitations also seems at odds with the *Noerr-Pennington* doctrine, which provides that the filing of a lawsuit and other petitioning activity generally cannot constitute an antitrust violation. *See Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 643–44 (9th Cir. 2009).

before November 24, 2016, and correctly concluded that the continuing violations doctrine does not save the antitrust claims in this case.

The district court is **AFFIRMED**.



*Hawthorne Hangar Operations LP v. Hawthorne Airport LLC*, No. 21-55542

VanDyke, J., dissenting:

I respectfully dissent from the majority for two reasons. First, there is a genuine dispute of material fact about whether Plaintiffs intended to enter the fuel sales business during the time the majority suggests. And second, the majority misunderstands and misapplies the continuing violations doctrine.

When reviewing summary judgment rulings, "[w]e must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Del. Valley Surgical Supply Inc. v. Johnson & Johnson*, 523 F.3d 1116, 1119 (9th Cir. 2008). The majority opinion concludes that there are no material factual disputes about when Plaintiffs' alleged injury occurred because the record clearly establishes that Dan Wolfe intended to enter the fuel sales business in 2009.

I disagree. There is substantial evidence to support the conclusion that Wolfe did not intend to start selling fuel to the public until much later than 2009—which is more than enough to create a genuine factual dispute about the issue. For example, Wolfe mentions in a 2014 email that "[w]e definitely do not want to become fuel sellers to anyone except our hangar-mates/tenants. We will not compete with Jet Center." The record also includes an email written in 2014 by a *Private Defendant*

1

that states "Dan [Wolfe] has no intention [of] competing with us in the area of fuel sales." To be sure, the majority mentions arguably contrasting evidence that *could* indicate Plaintiffs' intent to sell fuel in 2009 (or any time before the four-year statute of limitations deadline). But such conflicting evidence is not uncommon in cases positioned for summary judgment, and it is hornbook law that in such circumstances summary judgment is inappropriate. The district court thus erred by granting summary judgement.

I also disagree with the majority's continuing violations analysis. Per the majority, the continuing violations doctrine doesn't apply because Private Defendants built the fence in 2017, after the original four-year statute of limitations period. To justify this conclusion, the majority cites only to *Samsung Elecs. Co. v. Panasonic Corp.*, 747 F.3d 1199, 1202 (9th Cir. 2014). But nowhere in *Samsung* did we say that the continuing violations doctrine applies only to injuries sustained during the *original* limitations period. In fact, *Samsung* established the opposite, citing numerous cases where an action that occurred *after* the initial statute of limitations had run restarted the statute of limitations. *See id.* at 1203 (collecting cases). This point was made most clearly in *Hennegan v. Pacifico Creative Servs., Inc.*, 787 F.2d 1299 (9th Cir. 1986), where our court specifically held the initial "statute of limitations does not bar the Hennegans from seeking damages for injuries inflicted after [the original statute of limitations deadline]."). *Id.* at 1301. Indeed,

2

the *whole point* of the continuing violations doctrine is that it is "an exception to this time limit." *Samsung*, 747 F.3d at 1202.

With a proper view of the doctrine in mind, the clock should be restarted in this case. Under circuit precedent, a continuing violation is an overt act that must: (1) be new and independent and not a reaffirmation of a previous act; and (2) inflict new and accumulating injury on the plaintiff. *See Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 238 (9th Cir. 1987). Here, Private Defendants' reconstruction of the fence, as well as their suit against Plaintiffs in state court, were both overt acts that should have restarted the limitations period.

The construction of a new fence is a continuing violation. This was not a continuation of some previous plan, nor was it a passive decision. Private Defendants actively constructed a barrier to hinder the Plaintiffs' ability to sell fuel. And the building of the fence clearly inflicted a "new and accumulating injury." *Id*. Wolfe had already invested over $1.2 million into the fueling capabilities on his parcel of land, but the fence acted as a literal barrier of entry for potential clients to use his services. Placing a new physical obstacle in a competitor's path for customers causes obvious harm and clearly furthers his injury, and therefore qualifies as a continuing violation. *See Hennegan*, 787 F.2d at 1300 ("A civil cause of action under the [antitrust laws] arises at each time the plaintiff's interest is

3

invaded to his damage, and the statute of limitations begins to run at that time."

(internal quotation marks omitted)).

Private Defendants' suit against Plaintiffs in state court is another overt instance of a continuing violation. *Pace* addressed this exact question and held "that the last overt act in the enforcement of this contract was *the initiation of the lawsuit in state court*." 813 F.2d at 239 (emphasis added). Given that Private Defendants filed their enforcement action against the Plaintiffs in 2017, this suit is undoubtedly within the (restarted) four-year statute of limitations prescribed by the Sherman Act.

I respectfully dissent.